REICHERT v. ST. L. & S. FR. RY.

1. STREETS: *Fee in soil of: Right of adjacent owner.*
   Subject to the easement of the public in a street, to use and enjoy it as a highway, the fee therein belongs to the owners of adjacent lots. And any use of the street not contemplated by its original dedication to the purposes of a highway, is an infringement of the reserved rights of such owners, for which they may invoke the ordinary legal remedies.

2. RAILROADS: *Right of way over street.*
   The use of a street for constructing and operating thereon a railroad, is not within the scope of the easement which the public have therein as a high-

way. A city cannot therefore grant to a railway company the right of way over one of its streets; and no validity can be imparted to an ordinance adopted for that purpose, by an act of the legislature confirming it.

3. SAME: *Ejectment for land occupied by: Estoppel.* .

Where a railway company enters upon land without compensation to the owner and without his consent, and occupies it for a period of more than three years, during which time the owner of the land, with a knowledge of such occupancy, makes no objection thereto, although he knows that the company is expending large sums in laying its track and in erecting depot buildings which can only be reached by passing over his land, he will be held to have acquiesced in the occupancy of the road and will be estopped to maintain ejectment for the land.

APPEAL from *Sebastian* Circuit Court, Ft. Smith District. JNO. S. LITTLE, Judge.

*Martin & McDonough,* for appellant.

The court erred in overruling the demurrer to the 3rd and 4th paragraphs of defendant's answer. The company constructed its track without the consent of the property owners, without proceedings of condemnation, or making compensation; the city ordinance was void; nor did the company get the consent of two-thirds of the property owners as required by law. (Mansf. Dig., sec. 5471.) The legislature could not authorize the passage of such an ordinance as was passed by the council.

The owner of an abutting lot on a public highway owns the fee to the middle of the way. 9 Ind., 467; 48 Id., 178; Sedg. & W. Tr. of Titles to Lands, 132, 135; 3 A. & E. R. Cases, 218; Thompson Highways, 25–27, and many others. And so owning the fee may maintain ejectment against any one occupying the street in a way inconsistent with the public easement. 1 Burrow, 133; 41 Cal., 259; 3 Dutch, 76; Dill Mun. Corp., 662–5; Adams Eject., 19–21; Wait Ac. and Def., vol. 3, p. 68, secs. 4, 5; Tyler Eject., 37; Sedg. & W. Tr. Land Titles, secs. 130, 132 and

Reichert v. Railway.

135; 70 Ala., 227; 56 Tex., 66; 33 N. J. L., 115; Rorer on R. R., 305, 327, 333, etc.; 19 Minn., 439; 37 Miss., 700; 54 Miss., 259; Pierce on R. R., 167; 89 Penn. St., 282; 27 Ind., 260; 67 Ill., 191; 90 Ill., 316; 13 Kans., 496; 64 Iowa, 293; 20 N. W. Rep., 442; 20 Wis., 135; 43 Iowa, 498; 37 Oh. St., 147; 46 Am. Rep., 164; 1 Conn., 103; Angel High., sec. 320; 6 Am. Dec., 216; 11 Id., 658; 13 Allen, 256; 23 N. Y., 61; 24 N. Y., 655; 30 N. J. L., 97; 55 Ala., 413; Redfield on Ry., p. 335, note 2, etc., and 364.

The council had no power to pass the ordinance, this is conceded, but if it had the company never complied with the act of the Legislature March 1, 1883.

The legislature cannot directly or indirectly through a city council authorize a railroad company to take private property without compensation. The running of a steam railroad over a public highway is an additional easement, inconsistent with the former public easement, and is taking private property without just compensation. Dill. Mun. Corp., 707 to 727 and C. C.; art. 2, sec. 22, const.; art 12, sec. 9, Ib.; 60 Iowa, 740; 43 Iowa, 636; 57 Ia., 393; Thomp. Highw., 396; 3 Kent., 340 note y, and cases; 16 N. Y., 109; 41 Cal., 259; 14 Wis., 640; 67 Ind., 439; Dill. Mun. Corp., 704, note 1, 703 and cases, 725.

2. The facts set up in the 4th paragraph do not create an estoppel. It has none of the elements of an estoppel *in pais*, and is certainly not *by deed*. Big. Est., 586 to 600; 39 Ark., 131; 36 Id., 96; 26 Ala., 612; 18 Id., 323; 3 Dana, 73; 55 Am., Dec., 113; 9 B. and C., 577; 6 Peck, 454; 57 Am. Dec., 64 and note; 57 Id., 442, 782 and note, and many others. Also, 33 Ark., 465.

Review the authorities holding contrary views, but con-

tend that the constitutions of these States do not require *compensation first to be made.* 7 Ind., 32, and Ib., 577, have been overruled. 89 Ind., 128; 10 Am. and E. cases, 284; 3 Ib., 208; review *Turner* case, 31 Ark., 494, which was decided upon a statute that does *not exist now.* R. v. *Baker*, 45 Ark., 252.

81 Mo., 127, is not in point; then the fee was not in the owner. In other cases the Ry. entered *by consent.* In 57 Mo., 256, the land was *regularly* condemned, and so we find the distinction in most if not all the cases. See 57 Mo., 265; 6 N. C., 540; 20 Oh. St., 81, and others.

Pierce on R. R., 169, is not sustained by the authorities he cites, reviewing them. But at p. 167, Pierce says ejectment is the remedy. See cases cited. See, also, Wood Ry. Law, 792, 787; Redf. Ry., pp. 373, 381; Mills Em. Dom., sec. 140; 41 Iowa, 419; 64 Id., 292; 66 Penn. St., 464; 35 Ark., 363; 32 Id., 25.

The great weight of authority is that ejectment will lie. See late case, *Organ v. M. &. L. R. R. R.*, 51 Ark., 235.

*Clayton & Forrester*, for appellee.

1. The third paragraph of the answer was a valid defence. The council properly passed the ordinance, which was validated by acts 1883, p. 69, sec. 1.

2. No action of ejectment will lie for the additional burden on the fee; the remedy is by action for damages. 41 Ark., 202; 45 Id., 252; 57 Mo., 496.

The legislature had power to ratify the ordinance, even if the council had no power to pass it. 1 Rorer R. R., 497–8, 509, n. 2; 33 Fed. Rep., 900; 23 Am. Law Reg., 440.

The fourth paragraph set up a good defence. Appellants are estopped. 22 A. and E. R. Cases, pp. 123, 128 and

Reichert v. Railway.

note; 17 Id., 107; 33 Vt., 311; 41 Mich., 336; 13 Barb., 646; 57 Mo., 296; 9 C. E. Green., 49; 10 Id., 316; 31 Ark., 494; 14 Wis., 443; 22 Wis., 288; 7 Dana., 276; 14 A. and E. R. Cases, 225; 21 N. J. Eq., 288; 63 Wis., 327; 5 Vroom, 99; 108 Mass., 208; 35 La. Ann., 924; 21 Cent. L. J., 334–6, note; 28 A. and E. R. Cases, 250; 2 So. Rep., 69.

Acquiescence bars ejectment. 18 Oh. St., 179; 6 Id., 136; 17 Fed. Rep., 492; 64 Mo., 453; Mills Em. Dom., 2d ed., secs. 140 and 141.

Owner of land who knowingly permits a railway to be constructed upon it without objections, is estopped from recovering possession of the land so used by such railway. *Lawrence v. Morgan's Louisiana and Texas R. R. and Steamship Co.*, 39 Louisiana Annual, 427; 4 Am. State Reports, p. 265 and note at p. 269; *Teegarden v. Davis*, 36 Ohio State, 603; 98 Am. Dec., note, p. 102; *Cin., Ham. and Ind. Ry. Co. v. Clifford*, 113 Ind., 467; *Ind., Bloom. and West. Ry. Co. v. McBroom*, 114 Ind., 200; 2nd Wood's Ry. Law, 792.

A license may be inferred from the acts of the parties in connection with the silent acquiescence of the plaintiff and such acquiescence may inure as a license by estoppel. Abbott's Trial Evidence, 638. As to estoppel, see further *Little Rock and N. R. R. Co. v. L. R., Miss. River and Texas R. R. Co.*, 36 Ark.

HEMINGWAY, J.

The appellants are the owners of certain lots in Fort Smith that abut on Ozark street. In 1883 the appellee constructed its railroad along the centre of the street, and since then has used it in running its trains.

The appellants owning the lots and therefore to the middle

of the street, brought this action to recover possession of that part of the street occupied by the appellee's road bed.

The appellee answered in five paragraphs. The appellant demurred to the answer, and the court overruled the demurrer to the third and fourth paragraphs; the appellants "elected to stand on their demurrer" and the court dismissed their complaint with costs. They allege as grounds upon which to reverse the judgment, that the court erred in overruling their demurrer to the third and fourth paragraphs in the answer, which are as follows: "3. Defendant further answering says, that on the 2nd day of Jan., 1883, the city council of the city of Fort Smith granted to it by an ordinance passed by said council the right of way over, along and upon said street; that under and by virtue of said ordinance and the provisions of its charter, it entered upon and constructed its road bed upon said street and has continued to occupy the same in the manner and for the purpose contemplated by its charter and the said ordinance. That on the 1st day of March, 1883, the General Assembly of the State of Arkansas passed an act validating and confirming said ordinance and the right of the defendant thereunder, and defendant says its entry upon and use of said streets and premises as a right of way was and is not wrongful, and that plaintiffs are not entitled to have and maintain their said action.

"4. Defendant further answering says, that it entered upon and constructed its road along, over and upon said street as claimed by plaintiffs, and built its station house and established its depot for the city of Fort Smith, at the intersection of Ozark street with Walnut street, and expended large sums of money laying its track, acquiring depot grounds and erecting suitable depot buildings. That plaintiffs and those under whom they derive their alleged title had full

knowledge of the aforesaid facts and made no objection to the occupancy of said street by defendant as aforesaid, although they knew that the use and occupancy thereof was essential to enable the defendant to reach its depot with its trains and conduct its business. Wherefore the defendant alleges that plaintiffs are estopped from bringing their action in this cause."

It is conceded in the pleadings, that the appellants hold the freehold to the middle of the street, subject to the easemet of the public to use and enjoy it as a street.

A street is a highway, nothing more, over which the people have a right of passage. The interest of the public in it does not comprehend any interest in the soil; the right of the freehold is unaffected by establishing the highway. Its use by every citizen must be appropriate for the purpose for which it was intended—that is, of transit, with such stoppage as business, necessity, accident or the ordinary exigencies of travel may require. The owner of the freehold may make any use of the soil not inconsistent with the public easement; and any use of it by another, which is not within the scope of the easement, is an infringement of his rights for which he may invoke the ordinary legal remedies. 2 Smith's Leading Cases, 144, 167; *Goodtittle v. Alker*, 1 Burr., 133; *Taylor v. Armstrong*, 24 Ark., 102. The appellee's occupancy and use of the street is an infringement of the reserved rights of the appellants therein, unless it is one of the modes of enjoying the easement in a street contemplated in its original dedication. Upon this question the authorities are divided.

Judge Dillon, after a thorough and discriminating investigation and consideration of the authorities, concludes that, "The weight of judicial authority at present undoubtedly is, that where the public have only an easement in the street,

Vol. LI.—32

1. STREETS: Fee in soil of: Right of adjacent owner.

the fee is retained by the adjacent owner, the legislature can not, under the constitutional guaranty of private property, authorize a steam railroad to be constructed thereon, against the will of the adjoining owner, without compensation to him. In other words, such a railway, as usually constructed and operated, is an additional servitude." Dillon Mun. Corp., vol. 2, page 717. The question was decided by the supreme court of Massachusetts in the case of the *Inhabitants, etc., v. Conn. Riv. R. Co.,* 4 Cush., 71, and Mr. Chief Justice Shaw delivering the opinion of the court said: "The two uses are almost, if not wholly, inconsistent with each other; so that taking the highway for a railroad will nearly supercede the former use to which it had been legally appropriated." The court of appeals in New York, in several cases have announced the same conclusion. In the case of *Wager v. Troy U. R. Co.,* 25 N. Y., 533, the court say: "It is quite apparent that the use by the public of a highway, and the use thereof by a railroad company, is essentially different. In the one case every person is at liberty to travel over the highway in any place or part thereof, but he has no exclusive right of occupation of any part thereof except while he is temporarily passing over it. It would be a trespass for him to occupy any part of the highway exclusively, for any longer period of time than was necessary for that purpose and the stoppage incident thereto. But a railroad company takes exclusive and permanent possession of a portion of the street or highway. It lays down its rails upon, or imbeds them in the soil, and thus appropriates a portion of the street to its exclusive use, and for its own particular mode of conveyance." The same court discussing the question in the case of *Williams v. N. Y. C. R. Co.,* 16 N. Y., 109, says: "The argument is, that he has consented to the laying out

Reichert v. Railway.

of a highway upon his land; *ergo*, he has consented to the building of a railroad upon it; although one of these benefits his land, renders access to it easy and enhances its price, while the other makes access to it both difficult and dangerous and renders it comparatively valueless. It is the public interest supposed to be involved which begets the difficulty, and it is just for this reason that the constitution interferes for the protection of individual rights, and provides that private property shall not be taken for public use without just compensation." The operation of the cars endangers others in the use of the highway, and is always attended with annoyance and inconvenience to those occupying adjacent property. The rules above find emphatic endorsement from the supreme court of Wisconsin, in the case of *Ford v. N. W. R. Co.* 14 Wis., 609. They are approved either directly or indirectly, by the courts of last resort in a large number of the States, and we think are sustained as well by reason as authority. *City of Denver v. Bayer*, 23 Am. L. Reg., 440; *Indianapolis, B. & W. R. Co. v. Hartley*, 67 Ill.. 439; *Imlay v. Union Branch R. Co.*, 26 Conn., 249; *Kuchemon & Kinke v. C. C. & D. Ry. Co.*, 46 Iowa, 366; Cooleys Con. Lim., 549; *Taylor v. Chi. St. R. Co.*, 63 Wis., 327. When the carriages and motors used in operating a railroad, and their danger to others using the same highway,—the insecurity, inconvenience and annoyance they occasion occupants of adjacent lots, and the injury to the use and value of the lots are considered, the analogy between the use of the street for ordinary travel and its use for a railroad, is entirely lost.

Such being the case, the right of way of the appellee was carved out of the freehold of the appellants, and not out of the easement controlled by the city of Fort Smith. Under

2. RAILRODS: Right of way over street.

the constitution, the city of Fort Smith could not transfer it to the appellee. The legislature could impart no validity to such an attempted transfer. The third paragraph in the answer did not allege facts constituting a ground of defence. The public interest in the street is under the control and supervision of the city, and the ordinance may furnish the appellee immunity from complaint or prosecution for interference with the easement; it can confer no rights as against the owner of the servient estate.

Although the appellee acquired no right of way under the city ordinance or act of the General Assembly, it was authorized legally to appropriate it, upon making compensation to the owner. The State had invested it with its right of eminent domain to be exercised at its will, upon compliance with that condition. It was not bound to consult the pleasure of the owner. His consent would not have been required, nor his dissent regarded, if compensation had first been made to the owner. This condition is imposed upon the right, for the benefit and protection of the owner. It is entirely for his good, and has no reference to any public interest or policy. Such being its object and purpose, compliance with it may be insisted upon or waived, at the pleasure of the owner. He may arrest the first step toward appropriation, until compensation is made, and to this end the law supplies abundant remedies; or he may permit the acts of appropriation to proceed until it is consummated. In that event it does not follow that he can invoke the same remedies.

A text writer of high standing says: ''That if a landowner knowing that a railway company has entered on his land and is engaged in constructing its road without having complied with the statute, remains inactive and permits them to go on and expend large sums in the work, he will be estopped from

Reichert v. Railway.

maintaining ejectment, and will be regarded as having acquiesced therein.'' Woods Railway Law, page 792. This conclusion is reached from the principle announced by Lord Chancellor Cottenham, in the case of the *Duke of Leeds v. Earl of Amherst*, 2 Phill. Chy. Cases, 117–23, that ''if a party having a right, stands by and sees another dealing with the property in a manner inconsistent with that right, and makes no objection while the act is in progress, he can not afterwards complain.''

Judge Redfield quoted the Lord Chancellor with approval, in a case involving the principle invoked in this, though on a different state of facts. He says, ''in these great public works the shortest period of clear acquiescence, so as to lead the company to infer that the party intends to waive his claim for present payment, will be held to conclude the right to assert the claim in any such form as to stop the company in the progress of their work, and especially to stop the running of their road after it has been put in operation, whereby the public acquire important interests in its continuance. The party does not, of course, lose his claim, or the right to enforce it in all proper modes. He may possibly have some right analogous to the vendor's lien in England.'' His conclusion was that a waiver barred the action of ejectment. It is possible that the fact in that case did not call for the opinion delivered; but be that as it may, the case was reviewed by the court years afterward, when time and experience had given opportunity to test the correctness of the opinions expressed, and they were in so far as here quoted approved, in stronger language. The court there say: ''We therefore hold that where the railroad company has entered upon land and constructed its road without making compensation to the land owner, and such entry and construction

3. Ejectment for land occupied by railroad: Estoppel.

were by the latter's consent, that ejectment can not be maintained; and the same rule should apply where the original entry was without the consent of the land owner, in case he stands by and knowing of the entry and conrtruction, makes no objection to it and permits the road to be used for years. He should under such circumstances be held to have acquiesced therein. But the owner should not be deprived of compensation for his land." *Kittrell v. R. R. Co.*, 63 Vt., 79. The supreme court of Indiana in a late and well considered opinion, announces the same rule. *Midland Ry. Co. v. Smith*, 15 N. E. Rep., 256.

The same views are expressed by the supreme court of Ohio, and in very much the same terms. They say, "Where a party stands by, as we must presume the plaintiff to have done in the present case, and silently sees a public railroad constructed upon his land, it is too late for him, after the road is completed, or large sums of money expended on the faith of his apparent acquiescence, to seek by injunction or otherwise to deny the company the right to use the property. Considerations of public policy, as well as recognized principles of justice between parties, require that we should hold in such cases, that the property of the owner can not be reclaimed and that there only remains to him a right of compensation. * * * The work being completed, the public, as well as those directly interested in the road, as stock-holders and creditors, have a right to insist on the application of the rule, that he who will not speak when he should, will not be permitted to speak when he would." *Goodin v. Cin. W. Con. Co.*, 18 O. St., 169. The general doctrine is sufficiently indicated in the cases cited and is abundantly sustained in many others. *U. S. v. Great Falls Man. Co.*, 112 U. S., 645-56; *Harlow v. Marquette, H. & O. R. Co.*, 41 Mich.,

336; *Pryzbylowicz v. Mo. Riv. R. Co.*, 17 Fed. Rep., 492; *Lawrence v. Morgan's L. & T. R. & S. S. Co.*, 2 So. Rep., 69; *St. Julian v. R. R. Co.*, 35 La. An., 924; *N. O. & Selma R. Co. v. Jones*, 68 Ala., 48; *Pettibone v. La. C. & Mil. R. Co.*, 14 Wis., 443; *Nicholson v. N. Y. & N. H. R. Co.*, 22 Conn., 74.

By authority and upon principle, it would seem that, original consent of the owner and his subsequent unreasonable acquiescence, should be viewed alike. In the case of *Turner v. C. & F. R. Co.*, 31 Ark., 494–510, this court said, "if the appellee was not confined to his statute remedy, as it seems from the authorities he was, he should in justice be required to resort to some remedy that would give him the value of his land, and leave the company in the use of the easement." The facts in that case did not call for this expression of opinion, but it indicates that the mind of the court looked with approval upon the line of authorities we have here referred to. The matter is incidentally discussed by this court in the case of *Ogan v. M. & L. R. R. R. Co.*, *ante 235* involving kindred questions; in that case the court granted the relief sought, for the reason as stated that, it could not be said that the party seeking it had stood by and acquiesced in the acts of appropriation. In that opinion the views of this court are to some extent indicated as to the rights and remedies of the owner against a company occupying his lands.

There are some courts of high learning that differ with the views quoted; but after a careful examination of the cases cited in the brief of appellants and many others upon the subject, we think they are against the current of authority and not sustained by reason. The complaint was filed Sept. 10th, 1886; the city ordinance was passed Jan. 2nd, 1883,

and during that entire time the record discloses no objection on the part of the appellants to the use and occupation of the street by the railroad. We think they must be held to have acquiesced in it.

The fourth paragraph of the answer contains a sufficient defence to the complaint. The appellee urges that no action of ejectment will lie for the burden imposed on the fee by the railroad, and cites in support two decisions of this court; *Little R. & Ft. S. Ry. v. McGehee*, 41 Ark., 202; *L. R. & F. S. Ry. Co. v. Boken*, 45 Ark., 252. The question was not involved, referred to or discussed in either of the cases cited. That ejectment is a proper remedy, seems to be borne out by the authorities elsewhere, and it is defeated in this cause by the voluntary conduct of the appellants. *Weisbudd v. Chi. & N. W. R. Co.*, 21 Wis., 609; *Wager v. Troy Union R. Co.*, 25 N. Y., 534; *Smith v. Chi., A. & St. L. R.*, 67 Ill., 191; *Sharp v. St. L. & S. E. Ry. Co.*, 49 Ind., 296; Dillon on Mun. Corp., sec. 662.

As the fourth paragraph in the answer set up a good defence the judgment is affirmed.