ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.*

BATESVILLE & WINERVA TELEPHONE COMPANY.

Opinion delivered November 5, 1906.

1. TELEPHONE COMPANY—DESTRUCTION OF LINE—DAMAGES.—Where a telephone company has without objection constructed its line along a railroad track so as not to interfere with the operation of the railroad, the railroad company is not authorized to remove such line from its right-of-way, and is liable for damages for so doing. (Page 502.)

2. SAME—LIABILITY FOR DOUBLE DAMAGES.—Kirby's Digest, § 1899, which makes it a misdemeanor "wilfully and intentionally" to destroy any telephone line, and provides that a person guilty of such offense shall "pay to the owners of said line double the amount of all damages sustained thereby," implies not merely a voluntary act, but one done with an evil purpose. Thus, where a railroad company unnecessarily destroyed a telephone line along its track, believing that it was a menace to the operation of its trains when it was not, the evil intent was lacking which would render the railroad company liable for double damages. (Page 504.)

Appeal from Izard Circuit Court; *John W. Meeks,* Judge; reversed in part.

The Batesville & Winerva Telephone Company sued the St. Louis, Iron Mountain & Southern Railway Company and the Western Union Telegraph Company in tort. The first count alleged that plaintiff was engaged in the telephone business, owning and operating a telephone line in Independence, Izard and Baxter counties, Arkansas, running along the east bank of White River and upon its own right of way; "that in 1901 and 1902, while laying and constructing the said railway and telegraph line of defendants, the said defendants unlawfully, wilfully and intentionally cut down, tore down and destroyed a large number of telephones poles and wires where same touched the right of way of said railway company." A second count charged "that in the latter part of 1903 defendants wilfully and intentionally cut down, dug up and removed all of plaintiff's poles and wires that were located on defendant's right of way in the counties of Baxter and Izard running from Cotter to Penter's Bluff in Independence County." The total damages asked were $17,000.

The joint answer of the defendants denied (1) that the plaintiff's poles or wires were destroyed or torn down by either

of them in 1901 or 1902, or that plaintiff was damaged in any sum by the acts of defendants; that if any damage was done to plaintiff in 1901 or 1902 it was done by the White River Railway Company, its contractors and subcontractors, who were independent contractors for whose acts defendants were not responsible. (2) Defendant, admitted that during 1903 defendant railway company purchased and secured all the rights and privileges of the White River Railway Company, and that, having purchased an exclusive right of way, it removed certain telephone poles and wires of plaintiff from its right of way, after giving due notice to plaintiff to remove same. It further alleged that plaintiff's poles were erected over the White River Railway Company's right of way, and that by purchase defendant railway company became entitled to exclusive use of same; that plaintiff's poles and wires crossed the railway track in many places, and was unskillfully constructed, was a menace to the safe operation of said railway, to such an extent that it interfered with the operation of the railway.

Farris, president of plaintiff telephone company, testified that plaintiff owned the telephone line erected between Penter's Bluff and Sylamore on the summer of 1901 before the railway was constructed. The public road was followed closely, and verbal consent was given to lay the line over private property. In December, 1903, the plaintiff's poles and wires were removed from defendant's right of way, thereby destroying the use of the line. Thirteen miles were taken down, and plaintiff abandoned the route. Plaintiff was damaged at the rate of $40 per mile, or $520. The loss of rents about $145, with cost of rebuilding, amounted to $957. The line was constructed high above the track, was never low enough to strike a brakeman on a box car. Witness admitted that plaintiff's wires crossed the railroad track in a number of places.

The court submitted the following questions to the jury, viz.: (1) "Do you find that the act of cutting the poles and wires of the plaintiff telephone company by the defendants was done wilfully and intentionally?" (2) "Do you find that the railroad company cut the poles and wires in good faith, believing that they endangered the safety of the employees of the railroad?"

The first question was answered by the jury in the affirmative, and the second in the negative. The jury found the actual

damages to be $600. On motion of plaintiff the court rendered judgment for $1200, double damages, against defendants.

Defendants have appealed.

*B. S. Johnson,* for appellant.

1. The verdict was contrary to the evidence.

2. Plaintiff was not entitled to double damages. The act, § 1899, Kirby's Digest, is a criminal statute, and the words "wilfully and intentionally," as used in this statute, were intended to mean more than simply the doing of a thing voluntarily and knowingly. 96 U. S. 699; 20 Pick. 222; 1 Bishop, Crim. Law, § 428; 155 U. S. 446; 174 U. S. 736; 49 S. W. 99; 30 Am. & Eng. Enc. Law, 529; 91 Ia. 146.

3. The court erred in refusing to permit the defendant to introduce in evidence the records of Izard County vacating certain roads, and therein permitting the plaintiff to introduce parol testimony controverting those records and to show that they were void. 33 Ark. 893; 4 Ark. 129; 7 Ark. 252.

*John B. McCaleb,* and *Bradshaw, Rhoton & Helm,* for appellee.

1. The verdict is sustained by the evidence. It is in proof that the appellee's telephone line was in operation before appellant had any right of way. There is no proof that appellant filed a preliminary survey, or a profile with the county clerk as required by law. Kirby's Digest, § § 6548, 2942, 6569. Before a railroad company can construct its line of road, it must procure a right-of-way, either by contract or by condemnation proceedings. If appellee's right of way lay along what appellant desired, it was its duty to condemn that also. *Ib.* § 2939. The law gives telephone companies a' right of way along that of railway companies. *Ib.* § § 2934-36. In any event the telephone company had an easement over the lands where its line ran, and this was subject to condemnation. 15 Cyc. 607 and 699.

2. Plaintiff was entitled to double damages when the jury found that the defendant wilfully and intentionally caused the damage. Kirby's Digest, § 1899.

Plaintiff was in possession when appellant bought, and the latter took subject to plaintiff's rights. 54 Ark. 499; 35 Ark.

391; 37 Ark. 195; 47 Ark. 543; 33 Ark. 465. If the trespass is an aggravated one, or the injury to property be done wilfully or wantonly, or be attended with such gross negligence as to manifest a careless disregard of consequences, the jury may award exemplary damages. 15 Ark. 452; 42 Ark. 321; 41 Ark. 295; 59 Ark. 215; Watson on Damages, § § 718-19. Such damages could be recovered in this case if it were not for the limitation to double damages contained in the statute.

3. No copies of the alleged records of the county court have been brought into the bill of exceptions. The presumption is that the ruling of the trial court in the matters complained of was correct.

Hill, C. J. 1. This was an action by the telephone company against the railroad company for removal by the latter of thirteen miles of telegraph line from the railroad right of way. The Reporter will state the issues and facts.

The verdict and special finding fix the fact that the telephone line was constructed before the railroad company had definitely located its line, and the further fact that the telephone line was not interfering with the proper and safe operation of the railroad, and was not a nuisance. These declarations are against the weight of the evidence, but have substantial evidence to sustain them, and hence can not be disturbed here. This takes from the case many questions presented on the instructions and as to the evidence.

This situation is presented, accepting the verdict as sustained by evidence: A telephone line is lawfully constructed; it obtains right of way over private land by verbal consent of the owners and along a highway under authority granted by section 2934, Kirby's Digest. Subsequently a railroad is constructed along the way occupied by the telephone line, and it acquires its right of way by purchase and conveyance from the landowners and the county roads occupied by it were vacated (accepting a version most favorable to the appellant). The telephone line is constructed and maintained so as not to render dangerous the operation of the railroad, and not to interfere therewith, and was not a nuisance along the highway or right of way. Can the railroad company, after repeated demands upon the telephone company to

remove its line from its right of way, remove the telephone line from the right of way, and thereby destroy its utility?

Concede, without deciding, that the telephone company was a mere licensee, and that the sale of the land containing its line revoked the license for its being there and the vacation of the county roads terminated its rights there, and from this viewpoint examine the situation of the parties.

The statutes expressly authorize a telephone company to enter a railroad right of way and survey, locate and lay out its line, being liable, however, for damages; and further authorize the condemnation of its way over a railroad right of way if it fails to agree upon its way by consent, contract or agreement. Kirby's Digest, § § 2934-2936. The statutes further give a property owner damages against a corporation authorized to appropriate private property when it does so without first paying therefor. Kirby's Digest, § § 2903-2905.

In *McKennon* v. *St. Louis, I. M. & So. Ry. Co.,* 69 Ark. 104, the court held that the owner of land wrongfully appropriated for a railroad may have prevented such wrongful taking by injunction; but if he has not prevented it, and the railroad does take his land for its way without condemning, then he is remitted to his action for damages, and can not recover his land by ejectment. If the railroad could be ejected by process at law, certainly the landowner could not forcibly eject and remove the railroad from the land. Exactly the same reasons apply in this case which applied in that one. The same statutes govern here which govern there; and if the statutory remedy for damages was exclusive there, it is necessarily exclusive here. While not mentioned in that case as a reason for the rule against ejecting a railroad company, it is a reason for it that public utilities must not be destroyed when a person has stood by and seen them constructed. *Reichert* v. *St. Louis & S. F. Ry. Co.,* 51 Ark. 491. The same principle would govern here.

A telephone line is a public utility (Joyce on Electric Lines, § 275); and its public importance is recognized by clothing it with the power of eminent domain, and giving it the free use of the State's highways. Kirby's Digest, § § 2934-2936, 2937 *et seq.* Therefore it follows that the railroad company, taking the view of the law most favorable to it under the evidence accredited

by the jury, was not authorized to remove the line of telephone from its right of way, and therefore it was liable for damages for so doing. The instructions sent this issue to the jury; and while they are not as clear as might be, yet the court fails to find prejudicial error in them.

2. The court submitted to the jury this question: "Do you find that the act of cutting the poles and wires of the plaintiff telephone company by the defendant was done wilfully and intentionally?" The jury answered, "Yes." The court gave judgment for double the amount of damages found as the actual damages. This was done pursuant to sec. 1899, Kirby's Digest, which makes it a misdemeanor to wilfully and intentionally destroy, injure or obstruct any telegraph or telephone line, and which adds to the penalty therein provided, "and pay to the owners of said line double the amount of all damages sustained thereby."

The court did not instruct the jury as to the meaning of the words "wilfully and intentionally," as used in the statute, and hence their finding can have no weight unless the words are to be taken literally. This is a criminal statute, and the words mean more than a mere doing voluntarily or knowingly the act in question. The use of the term "willful," and in this case almost its synonym, "intentional," in a criminal or penal statute "implies knowledge and a preference to do wrong." They mean in such statutes, "not merely voluntarily, but with a bad purpose." "An evil intent without justifiable excuse." "Doing or omitting to do a thing knowingly and wilfully implies not only a knowledge of the thing, but a determination with a bad intent to do it or omit to do it." *Felton* v. *United States,* 96 U. S. 699; *Evans* v. *United States,* 153 U. S. 586; *Potter* v. *United States,* 155 U. S. 438; *Spurr* v. *United States,* 174 U. S. 728.

These cases and the authorities therein reviewed conclusively settle that there is no place in this case for an invocation of this criminal statute. The weight of the evidence is decidedly that the telephone line was a hindrance and a menace to the safe operation of the road; and if that were true, the appellant was right in removing it. The jury has found that is not true, and it has the testimony of one witness to that effect, and on that question of fact its verdict is conclusive; but this question does not go to the

matter decided by the jury, but goes to the good faith or wanton-ness of the appellant, a question not submitted to the jury. There is no evidence here to submit this issue to the jury. The appellant was right in its position if the telephone line was a nuisance and a menace to its operation. The jury has said on some substantial evidence that it was not, and therefore it is settled that the railroad made a mistake in removing the line, and hence must pay for it; but this is far from proving the bad intent and evil motive necessary to convict it under this criminal statute. It was an error of the court to assess double damages.

Judgment reversed so far as it awards double damages, and affirmed as to the actual damages found by the jury.