JEWEL COAL & MINING COMPANY *v.* WATSON.

Opinion delivered January 30, 1928.

1. MINES AND MINERALS—WRONGFUL TAKING OF COAL.—Persons taking coal from land leased to another, if done under an honest mistake as to the boundaries of the tract from which they were entitled to take coal under an agreement with the lessor, would be liable to the lessee only for the value of the ore as originally in place, but if they took it out wrongfully and intentionally, they would be liable for the value thereof at the mouth of the mine.

2. MINES AND MINERALS—INTENTIONAL TAKING.—In a suit for the value of coal taken by defendants from land leased to plaintiff, testimony of defendants' witnesses that the taking was inten-

tional, *held* not to show that it was wrongful, but only that it was not accidental.

3. MINES AND MINERALS—WRONGFUL TAKING—DAMAGES.—To render one taking coal from land leased to another liable for damages in amount of the coal's value at the mouth of the mine, there must be a determination to take it with a bad intent, and not merely that it was taken voluntarily.

4. MINES AND MINERALS—INTENT IN TAKING COAL.—In an action for the value of coal taken by defendants from land leased to plaintiff, evidence *held* sufficient to show that defendants did not take the coal with bad intent, but thought they had a right to do so under agreement with the plaintiff's lessor.

5. TRESPASS—IGNORANCE OF BOUNDARIES AS DEFENSE.—It is one's duty to know and keep within the boundaries of his own land, and the ignorance thereof does not justify trespass on his neighbor's land.

6. WITNESSES—CREDIBILITY.—In a suit for the value of coal taken by the defendants from land leased to plaintiff, evidence that no suit was begun or action of any kind taken during the life of the lessor under the verbal agreement with whom the defendants claimed the right to take coal, *held* admissible as bearing on the credibility of witnesses.

7. MINES AND MINERALS—LACHES.—In a suit for the value of coal taken by defendants from land leased to plaintiff, evidence that no suit was begun or action of any kind taken during the life of the lessor, under a verbal agreement with whom defendants claimed the right to take the coal, *held* under the evidence to be insufficient to bar the cause of action on account of laches.

8. APPEAL AND ERROR—REMAND OF CAUSE.—The measure of damages for taking coal from land leased to plaintiff as the result of an honest mistake as to boundaries being the value of the coal as originally in place in the ground, the cause will be remanded, on reversal of judgment for defendants, to ascertain the amount of coal taken and the value per ton of coal as originally in the ground.

Appeal from Logan Chancery Court; *J. V. Bourland,* Chancellor; reversed.

*McCune, Caldwell & Downing, H. M. Noble, Ray Blair* and *Hill & Fitzhugh,* for appellant.

*Hall Brothers* and *Evans & Evans,* for appellee.

MEHAFFY, J. The appellant, who was plaintiff below, brought suit against J. D. Watson and sons, appellees, defendants below, to recover the value of coal which plaintiff claimed to have owned and alleged to have been

willfully and wrongfully taken by the defendants, and also for damages for wrongfully transporting coal through entries and haulage ways belonging to plaintiff.

Emil Baerlocher owned approximately 148 acres of land, and, on September 16, 1921, he leased all the coal under 124 acres of said land to the plaintiff. The lease was for a period of 20 years, and provided for a royalty of 21 cents per ton, and minimum royalty of $1,000 per year. This lease, however, did not cover the land in controversy, which was 3.8 acres. Besides the 124 acres included in the lease, however, Baerlocher owned 23.8 acres, and it was 3.8 acres out of this latter tract that it is claimed plaintiff owned and under which it is claimed that defendants took the coal.

On October 20, 1921, the plaintiff secured another lease from Baerlocher, which, it is alleged, covered the entire 148 acres, and the royalty per ton was the same, but the minimum royalty increased to $1,200 per year. It is alleged that this lease covered all of the coal owned by Baerlocher.

Plaintiff alleged that it was later discovered that there was an error in this lease of October 20, 1921, in that it did not properly describe the 3.8 acres. Plaintiff claims that this discrepancy was not discovered until early in the year of 1925.

On March 30, 1925, a new lease was executed which, it is alleged, was for the sole purpose of correcting the description of the 3.8-acre tract. The plaintiff makes no claim that defendants took any coal from any part of the Baerlocher lands, except from the 3.8-acre tract. The plaintiff alleged and contended that the defendants had no claim on said land at all, and that they had tried and failed to secure a lease from Baerlocher, and that they had also tried to secure lease from plaintiff.

Plaintiff alleges that the coal taken by defendants was a willful and intentional trespass, and that the measure of damages is the value of the ore as found at the mouth of the mine. That is, the value of the coal after it had been mined and brought to the surface.

The defendants admit that they are partners and engaged in mining coal, and have been for a number of years, and deny all of the material allegations of plaintiff's complaint. They allege that, in the year 1919, they leased lands from Hunter and from Jones, and were mining coal on these lands, and that in 1924 the defendants extended an entry across the southeast corner of the Baerlocher land, and that these entries on the Baerlocher land were made with Baerlocher's knowledge and consent, and in accordance with a verbal agreement made in 1919 and 1920, and they had settled and paid Baerlocher for the coal in accordance with said agreement. They alleged that this agreement between defendants and Baerlocher was known to the plaintiff at the time they secured a lease, and that there was no proper description of the 3.8 acres, and that they had a right, under the verbal agreement with Baerlocher, to take the coal which they did take, and that all the coal they took from the 3.8 acres was taken under the agreement and with the knowledge both of Baerlocher and of the plaintiff.

Plaintiff introduced in evidence plats showing the location of the lands leased and of the 3.8 acres, the land involved in this controversy.

The appellant states: "The issues in this case are brought to rather narrow confines under the pleadings and evidence."

The only questions involved are, first, did the defendants wrongfully take coal that belonged to the plaintiff? If they did not, it would be unnecessary to discuss or determine any other question. If, however, they did take coal that belonged to the plaintiff which they did not have a right to take, it then becomes important to determine whether they took it in good faith or whether they were willful trespassers, because, even if the coal belonged to the plaintiff and defendants took it as a result of an honest mistake, the defendants would have to pay only the value of the ore as it was originally in place in the ground; whereas, if they took out the coal wrongfully

and intentionally, that is, if they were willful trespassers, they would have to pay the value as found at the mouth of the mine.

Appellant states: "The sole issues are, first, the amount of coal removed, and, second, the measure of damages."

We agree with this statement of the appellant. And since these are the only issues involved, it is necessary to determine whether the coal taken by defendants was taken under an honest belief that they had a right to take it, or whether they willfully and intentionally took the ore, because, if they willfully and intentionally took the ore, the measure of damages would be the value of the coal as found at the mouth of the mine.

Several witnesses were asked by appellant if they intended to take this coal. That is, if it was intentional. They of course said it was. But evidently what they meant was not intentional in the sense that it was wrongful, but that it was not accidental; that it was voluntary.

The word "intentional," when used in connection with the doing of a wrongful act, signifies not only that the party intended to do the particular act, but to do it knowing at the time that it was wrongful. *Ickenroth* v. *St. Louis Transit Co.,* 102 Mo. App. 597, 77 S. W. 162.

It is perfectly plain that the witnesses did not mean that they took it knowing at the time that it was wrongful, but what they did mean was that it was intentional in the sense that it was not accidental.

This court has said, in defining "willfully" and "intentionally" in the Digest: "They mean in such statutes not merely voluntarily, but with a bad purpose. An evil intent without justifiable excuse. Doing, or omitting to do a thing, knowingly and willfully, implies not only knowledge of the thing, but a determination with a bad intent to do it or omit to do it." *St. L. I. M. & S. R. Co.* v. *Batesville & W. T. Co.,* 80 Ark. 499, 97 S. W. 660.

"Intentional" is used in the same sense here. That is, to make the person who takes the property liable for damages in the value of the coal at the mouth of the mine,

there must be a determination to take it with a bad intent, and not merely voluntary. It must be with a bad purpose.

In this case the plaintiff obtained a lease, first, for 124 acres from Baerlocher. At the time it procured this lease, it endeavored to secure a lease also on the lands in controversy, but Baerlocher declined to lease this land. Shortly thereafter another lease was taken, including the 124 acres already leased to plaintiff and 23.8 acres in addition. And of this 23.8 acres this lawsuit involves not the entire tract, but the 3.8 acres only. In this lease, however, the 3.8 acres was not correctly described, and defendants claim that, as the lease was written and recorded, they did not take any coal from the land on which plaintiff had a lease. In other words, as testified to by Watson, if the recorded lease was correct, Watson did not take coal from any part of the 3.8 acres, according to his testimony. It also appears from the evidence that Baerlocher not only agreed with the defendants to let them have this coal, but that he told plaintiffs that Watson should have the right to take coal from this tract of land.

Baerlocher died before the lawsuit was begun, but, before he died, he accepted pay from Watson for coal taken from this tract of land, which he presumably would not have done if there had been no understanding that Watson should take this coal.

Mr. Gaither, one of the witnesses who testified, had been manager and superintendent for the plaintiff for a number of years. He understood that Baerlocher had given Watson the right to take coal. The testimony on this question is conflicting, but it is sufficient to show that Watson did not take it with a bad motive, but that he thought he had a right, under his verbal agreement, to take it.

Appellant refers to many authorities and quotes from some, and, among other things, contends, and the authorities support the contention, that it is the duty of defendant to know the boundaries of his own land and keep within them, and ignorance thereof would not jus-

tify a trespasser upon his neighbor's land. *Jeffries* v. *Hargis,* 50 Ark. 65, 6 S. W. 328.

There is no controversy about this proposition of law. But in this case there is no contention about the boundaries, unless it might be said that the second lease taken, not describing the land accurately, might justify Watson in taking coal up to that line. We do not think that it would justify it, however, for the reason that he knew that Baerlocher had 23.8 acres, and he knew that the lease purported to convey 23.8 acres, and he therefore knew that the lease to the plaintiff included the land about which he and Baerlocher had had the verbal agreement. We think his conversation with the superintendent and manager of the plaintiff and the understanding he had with Baerlocher and all the facts and circumstances justify the conclusion that he was not a willful trespasser.

We deem it unnecessary to set out the testimony at length. It is conflicting, but we think it justifies the conclusion that we have reached. We also deem it unnecessary to comment upon or review the authorities to which attention has been called by appellant, because there is no dispute about the rules of law applicable to this case. And these principles or rules of law are well settled by decisions of this court, which make it unnecessary to refer to any other authorities.

The chancellor was in error in holding that the plaintiff's claim was barred by laches. It is true that no suit was begun and no action of any kind taken during the life of Baerlocher. And it was proper to admit this testimony for the purpose of showing the action of the parties and as bearing on the credibility of the witnesses. But we do not think it sufficient to bar the cause of action.

Since the appellant itself says that the only questions involved are the amount of coal taken and the measure of damages, it is unnecessary to discuss any other questions. The measure of damages is the value of the coal as it was originally in place in the ground. It will therefore be necessary, as contended by appellant, to

ascertain the amount of coal taken, and it will also be necessary to take proof on the value per ton of the coal as it was originally in the ground.

The decree is therefore reversed, and remanded with directions to ascertain the amount of coal taken and the value of the coal in the ground, and to take such further action as may be necessary, not inconsistent with this opinion.