**Ben CORE and Polly Anna Core, Husband and Wife, Plaintiffs,**

**v.**

**SOUTHWESTERN BELL TELEPHONE COMPANY, Defendant.**

Civ. No. 87–2115.

United States District Court,
W.D. Arkansas,
Fort Smith Division.

Nov. 9, 1987.

Ben Core, Daily, West, Core, Coffman & Canfield, Fort Smith, Ark., for plaintiffs.

Robert E. McCallum, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

### INTRODUCTION

This is an action brought by plaintiffs, Ben Core [1] and Polly Anna Core, against the defendant, Southwestern Bell Telephone Company, to redress an alleged trespass on land owned by the Cores. Plaintiffs are citizens and residents of the State of Arkansas. The defendant is a corporation incorporated under the laws of the State of Missouri with its principal place of business also in the State of Missouri. At the time this action was removed to federal court, the amount in controversy exceeded the sum of $10,000 exclusive of interest and costs. Therefore, the court is vested with subject matter jurisdiction by reason of complete diversity of citizenship and the meeting of the requisite jurisdictional amount. 28 U.S.C. § 1332(a)(1).

### PROCEDURAL HISTORY

On January 16, 1987, plaintiffs filed this cause of action in the Circuit Court of Crawford County, Arkansas. The complaint, docketed as No. CIV–87–17, alleged that the defendant, Southwestern Bell Telephone Company (hereinafter "SWB"), was trespassing by maintaining a right-of-way for an underground telephone cable across the Cores' land. The relief requested included recovering possession of that portion of the land wrongfully occupied by defendant and damages in the amount of "a reasonable rental value of the occupied premises from 1957 to present date and into the future for the time of the anticipated occupancy." SWB answered and defended the trespass claim on the ground that it was barred by the applicable statute of limitations. In the alternative, defendant prayed that the court enter an order finding SWB to have a prescriptive easement across the plaintiffs' property at the current location of the cable or that the court allow defendant to pursue a counterclaim against plaintiffs for condemnation.

A motion for summary judgment was filed by defendant on February 20, 1987, on the basis that the undisputed facts required dismissal of the complaint as time barred. On May 19, 1987, the circuit judge found "that the motion is without merit and should be denied." Subsequently, the Cores filed an amended complaint specifically stating that the damage award sought was an amount not less than $10,000. Pursuant to 28 U.S.C. § 1446(b), defendant submitted a timely petition for removal to federal court on the ground that diversity of citizenship was present and the amended complaint met the requisite jurisdictional amount. Thereafter, plaintiffs requested leave to file an amended and substituted complaint reducing the amount of the damages sought to $9,999. Over defendant's objection, the court granted the motion to amend and allowed the complaint to be filed. The Cores then filed a motion to remand the action to state court contending that federal jurisdiction no longer existed because the amount in controversy was less than $10,000. The court denied the motion to remand citing the following well settled rules:

> In determining whether or not federal jurisdiction is present in such a situation, the circumstances at the time of removal are determinative. *Hatridge v. Aetna Cas. & Surety Co.*, 415 F.2d 809 (8th Cir.1969). Subsequent changes, such as plaintiffs' postremoval voluntary reduction of the claim to less than the jurisdictional amount by amendment, do not defeat federal jurisdiction acquired through removal. *St. Paul [Mercury] Indemni-*

---

**1.** While the plaintiffs are proceeding pro se, the court knows Mr. Core to be a competent attorney with substantial practice before this court.

*ty Co. v. Cab [Red] Cab Co.*, 303 U.S. 283 [58 S.Ct. 586, 82 L.Ed. 845] (1928 [1938] ); *Hatridge, supra; Erwin v. Allied Van Lines, Inc.*, 239 F.Supp. 144 (W.D.Ark. 1965).

[Letter Opinion to Counsel dated July 30, 1987]. Four days after the motion to remand was denied, plaintiffs filed a motion for permission to nonsuit. Three days later, the court received a motion for summary judgment in which the defendant again argued that the trespass claim was barred by the applicable statute of limitations. The court allowed SWB to respond to the motion to nonsuit and then ruled as follows:

> Of course, the law clearly is that, under federal court procedure, a plaintiff does not have a right to dismiss his lawsuit without prejudice after the defendant has answered or filed a motion for summary judgment. Rule 41. In fact, the courts have held that trial courts must exercise sound judicial discretion in ruling on motions to dismiss without prejudice, and the court should endeavor to insure substantial justice to both parties. *See generally* Wright & Miller, *Federal Practice and Procedure: Civil* § 2364.
>
> \* \* \* \* \* \*
>
> In this case, the court is convinced that it will not "insure substantial justice to both parties" if plaintiffs are allowed to dismiss this lawsuit without prejudice so that, undoubtedly, it can be filed again in state court.
>
> \* \* \* \* \* \*
>
> Under the circumstances, the court believes that, in order to "insure substantial justice to both parties" it is necessary that, before a nonsuit be allowed, it impose certain conditions. If plaintiffs desire to dismiss the case without prejudice, they will be allowed to do so only upon the entry of an order providing that, if the matter is refiled in state court, before the case is allowed to proceed plaintiffs will be required to pay any reasonable fees and costs expended by the defendant in defending this matter to the point of dismissal. As the court of appeals directed in *Kern [v.*

*TXO. Production Corp.], supra* [738 F.2d 968 (8th Cir.1984) ], the order will provide that if the matter is refiled in state court, the court will "forthwith enter judgment ... which may be executed as provided by law, for the amount of costs and fees that it has fixed."

[Letter Opinion to Counsel dated August 25, 1987]. Plaintiffs notified the court by letter dated August 27, 1987, that they desired to proceed with the motion to nonsuit but objected to the imposition of any conditions. The following day, the court rejected the plaintiffs' objections and informed Mr. Core that

"Unless I hear from you to the contrary, I will, within the next several days, dismiss the matter without prejudice, and the order accomplishing this will contain certain conditions set forth in my August 25 letter." [Letter to Mr. Core dated August 28, 1987].

The court heard nothing from Mr. Core for nearly a month and, on September 24, 1987, in a letter to counsel indicated its intent to grant the motion for permission to nonsuit with the imposition of the aforementioned conditions upon receipt of documentation regarding the costs and attorney's fees incurred by SWB to this point. [Letter to Counsel dated September 24, 1987]. Before the court had an opportunity to carry out its intention, however, plaintiffs sought to withdraw the motion to nonsuit. The court allowed the withdrawal by letter dated October 3, 1987.

During the resolution of the motion to nonsuit, plaintiffs filed a response to the defendant's second motion for summary judgment. Both the motion and the response are identical to the pleadings filed in state court that resulted in the motion being denied. However, both parties have filed additional materials in this court that demonstrate there are no genuine issues of fact in dispute and that summary judgment should be entered in favor of the defendant.

## FACTS

The proceedings to date reflect the following material facts to be undisputed. In

1966, Ben and Polly Core purchased forty (40) acres of wild, unenclosed land described as:

> The Southeast Quarter (SE ¼) of the Northeast Quarter (NE ¼) of Section 24, Township 12 North, Range 30 West, Crawford County, Arkansas.

The real estate agent who arranged the sale did not know exactly where the boundaries or corners of the land lay and there were no natural boundary markings on any portion of the tract. The parties agree, however, that the SWB underground telephone cable was visible when the Cores purchased the property. The location of the cable was, and still is, marked by the fact that the right-of-way where the cable is buried is clear of trees while the adjoining land is wooded. In addition, SWB has constructed baffle and terracing on the right-of-way. Furthermore, SWB has marked the cable by one and maybe two poles standing ten feet high.

The plaintiffs made no effort to determine the exact boundaries of their property until sixteen years later. In January of 1982, for reasons altogether irrelevant to the location of the cable, the Cores became interested in the boundary line of the property adjoining the SE ¼ of the NE ¼. Mr. Core contacted the United States Forest Service at Ozark to determine the location of the common boundary he shared with Forest Service land on the east and west. Although he never learned anything about the boundary on the west, Mr. Core did discover that the boundary on the east had been marked. He then visited the property and noticed that the telephone cable apparently crossed the east forty. To confirm his suspicion, Mr. Core wrote to SWB on November 1, 1982, inquiring about the exact location of the cable. An attorney, Gary T. Hartman, replied to this inquiry by letter on November 4, 1982. He assured Mr. Core that the matter had been turned over to the SWB right-of-way office and that he would be contacted as soon as possible with the requested information. Hal Shirley from SWB phoned Mr. Core's office on November 15, 1982, and left a message with Mr. Core's secretary regarding the location of the cable. According to the secretary's handwritten notes, Mr. Shirley said there was no easement and no cable on SE NE, that there was a cable and easement on SE SE, and NE SE, running from Alma to Fayetteville, but no easement or cable on SE NE. Mr. Core assumed that the telephone company was correct and that the cable was not located on his 40-acre tract.

In 1986, the Cores again had reason to investigate the boundaries of the property and found they could not reconcile the location of the Forestry Service markers with the cleared line for the telephone cable. Mr. Core then requested a copy of the original survey from SWB. Robert McCallum, an attorney with SWB, contacted Mr. Core and informed him that the telephone company now suspected the cable might actually cross the Cores' property. When this was confirmed, Mr. McCallum initiated negotiations with the Cores for the purchase of an easement. To protect their interest, the Cores filed this lawsuit.

As noted, the parties agree that the Cores own the land in question and have since February 2, 1966. They also agree that SWB has maintained a right-of-way across this land since 1957 and that the underground cable was visible and known to the Cores from the time they purchased the property.

## DISCUSSION

### I. Power to Set Aside State Court Denial of Summary Judgment.

In an amended response to defendant's second motion for summary judgment, plaintiffs challenge the authority of this court to render a ruling contrary to that of the state court on the motion for summary judgment since the materials filed in connection with both motions are identical. According to plaintiffs,

> [t]he identical motion which has been filed by the defendant in this case for summary judgment was filed in the State Court and was adjudicated against the Defendant. The same constitutes a former adjudication in this and any other

court in which the same may be called into question.

In support of this argument, plaintiffs cite *Continental National Bank v. Holland Banking Company*, 66 F.2d 823 (8th Cir. 1933). This case carries no direct precedential value, as far as the matter at hand is concerned, because the court there dealt only with the force and effect of a final state court judgment in subsequent litigation initiated in federal court. That situation is clearly distinguishable from the one presented here for review, which concerns the effect of an interlocutory state court order on a federal court to which the case has been removed, and different rules apply.

It is well settled that interlocutory judgments, orders or decrees of the state court may be modified, opened or set aside by the federal court after removal. *General Invest. Co. v. Lake Shore & M.S.R. Co.*, 260 U.S. 261, 43 S.Ct. 106, 67 L.Ed. 244 (1922); *Butner v. Neustadter*, 324 F.2d 783 (9th Cir.1963); *Coyle v. Skirvin*, 124 F.2d 934 (10th Cir.), *cert. denied*, 316 U.S. 673, 62 S.Ct. 1044, 86 L.Ed. 1748 (1942); *Savell v. Southern R. Co.*, 93 F.2d 377 (5th Cir. 1937); *Arkansas v. Kansas & T. Coal Co.*, 96 F. 353 (8th Cir.1899), *rev'd on other grounds*, 183 U.S. 185, 22 S.Ct. 47, 46 L.Ed. 144 (1901); *Texas & St. L.R. Co. v. Rust*, 17 F. 275 (8th Cir.1883). Even though state court orders are not conclusive, they do remain binding on the federal court until set aside. Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters* § 3738 at 565.

These rules are derivative of the principle of continuity that governs removal actions. When a case is removed from state court, the federal court takes the case in the condition it was when the state court was deprived of jurisdiction. *Duncan v. Gegan*, 101 U.S. 810, 25 L.Ed. 875 (Otto 1879). The federal court accepts the case in its current posture just as though everything done in state court had in fact been done in federal court. *Munsey v. Testworth Laboratories*, 227 F.2d 902 (6th Cir. 1955). Therefore, it logically follows that the power of the state court to modify or set aside its interlocutory orders is trans-

ferred with the case to the federal court. *See General Invest. Co. v. Lake Shore & Mich. So. Ry. Co.*, 260 U.S. 261, 43 S.Ct. 106, 67 L.Ed. 244 (1922); *Daniels v. McKay Mach. Co.*, 607 F.2d 771 (7th Cir.1979). In *Daniels, supra*, the Seventh Circuit Court of Appeals quoted from the Supreme Court's opinion in *General Invest. Co.* as follows:

> The state court's ruling was purely interlocutory, and its status in this regard was not affected by the removal. Being interlocutory, it was subject to reconsideration, and would continue to be so up to the passing of a final decree. Had the cause remained in the state court, the power to reconsider would have been in that court, but when the removal was made the power passed with the cause to the District Court. Of course in the latter the ruling was to be treated with respect, but not as final or conclusive.

*Daniels*, 607 F.2d at 774 (quoting *General Invest. Co., supra*, 260 U.S. at 267, 43 S.Ct. at 110). Continuity is likewise preserved by 28 U.S.C. § 1450 which provides in pertinent part:

> All injunctions, orders and other proceedings had in such action prior to removal shall remain in full force and effect until dissolved or modified by the district court.

■ Therefore, federal courts may, under certain circumstances, overrule a state court denial of summary judgment after the case is removed to federal jurisdiction. For example, in *Preaseau v. Prudential Ins. Co. of America*, 591 F.2d 74 (9th Cir. 1979), the court of appeals found that a state court order denying summary judgment did not bar a federal court from later granting the same motion after the case was removed. The court analogized the situation to one in which a second federal judge is assigned a case in which a prior federal judge had denied a motion for summary judgment. In that case, the second judge may grant the motion if he is firmly convinced that an error of law was committed in denying the motion. *Id.* at 79. *See also Castner v. First National Bank of Anchorage*, 278 F.2d 376 (9th Cir.1960).

The Ninth Circuit quoted from its opinion in *Castner* setting forth the circumstances justifying setting aside or overruling a prior order:

> Under such circumstances, we feel that there is no abuse of discretion in overruling the prior judge. The second judge must conscientiously carry out his judicial function.... He is not doing this if he permits what he believes to be a prior erroneous ruling to control the case. He can settle the questions presently without compelling the parties to proceed with what may be a futile and expensive trial. We think these are cogent reasons and exceptional circumstances which justify a departure from the rule of comity within the permissible limits of judicial discretion.

*Id.* at 380. This practice reflects the rule that an order denying a motion for summary judgment is generally interlocutory in nature and is subject to reconsideration at any time. *Gialde v. Time, Inc.,* 480 F.2d 1295 (8th Cir.1973); *Kimble v. Anderson-Tully Co.,* 16 F.R.D. 502 (E.D.Ark.1955).

A district court case out of Wisconsin is particularly illustrative of the circumstances under which a federal court may overrule a state court denial of summary judgment after the case is removed to federal jurisdiction. *Federal Deposit Ins. Corp. v. First Mortg. Inv.,* 485 F.Supp. 445 (E.D. Wis.1980). In that case, the district court judge reasoned that despite the rule of "the law of the case," where good reasons exist, prior rulings can be reevaluated taking into account changed circumstances. *Id.* at 450. Consequently, the federal court determined that it should rehear the motion for summary judgment "in light of the preliminary and scantily reasoned determination of the effect of section 1823(e) by the state trial court, and the federal questions involved...." *Id.* at 450.

■ These cases provide ample grounds for rehearing the present motion for summary judgment. First, the order of the state court denying the motion for summary judgment is interlocutory in nature and, therefore, is subject to reconsideration at any time by either the lower court or the federal court after removal. Second, the state court provided absolutely no basis for its decision to deny the motion. This court is unable to determine from the scantily worded order which facts the court believed were in dispute. In fact, the court made no specific finding that there were material facts in dispute barring a summary judgment. Rather, the court simply found the motion to be "without merit." Third, changed circumstances now exist that lead this court to conclude that there are no genuine disputes as to any material fact. The defendant has made further admissions regarding the truth of Mr. Core's recitation of the conversations between the Cores and SWB during the controversy over the location of the underground cable. In the court's view, these are cogent reasons justifying rehearing the pending motion.

## II. Statute of Limitations.

The defendant contends in its motion for summary judgment that plaintiffs' cause of action is time barred by Ark.Stat.Ann. § 77-1636 which provides as follows:

> No suit shall be brought against any telephone company or cooperative by the reason of the maintenance of telephone lines, poles, and fixtures, on any real property, or with any right of way of any public way, unless it is commenced within two [2] years after the cause of action has accrued.

According to SWB, the statute begins to run when the plaintiffs had notice of the presence of the underground cable, *i.e.,* 1966. In response, plaintiffs argue that section 77-1636 is unconstitutional and that they did not have adequate notice that the cable actually crossed their land until 1986.

■ Although no case has dealt with a constitutional challenge to section 77-1636, several decisions have discussed the statute without any mention of possible constitutional violations as a result of its use. *Mabry v. Southwestern Bell Tel. Co.,* 270 Ark. 845, 606 S.W.2d 373 (Ark.Ct.App. 1980); *Southwestern Bell Tel. Co. v. Poindexter,* 245 Ark. 624, 433 S.W.2d 833 (1968). Thus, the court believes the consti-

tutional issues raised by plaintiffs are without merit and will be summarily dismissed.

As to the question of adequate notice, SWB relies heavily on *Poindexter, supra.* In that case, Mr. Poindexter argued that the underground telephone cable on his property was so concealed by thick underbrush and pine trees that it did not put him on notice of its location and, thus, the statute of limitations did not begin to run until he actually learned it was on his property. Applying an objective diligent purchaser standard for judging "notice," the Arkansas Supreme Court stated:

> First, he admits that he did not inspect the property before he bought it; so he would not have seen the notices even if the underbrush and pine trees had not been there. Second, a prospective purchaser of part of the tract did make an inspection, discovered the signs, and told Poindexter about the cable. Thus the only relevant proof that has been brought to our attention indicates that the signs would have been discovered by a diligent purchaser. Finally, the proof does not suggest, and we are not told, how Bell might better have given notice of its underground cable than by posting conspicuous signs at intervals along the easement itself. That the landowner permitted the land to become overgrown with underbrush cannot fairly be used to nullify Bell's efforts to give notice of its occupancy of the easement.

*Id.* at 627, 433 S.W.2d 833.

In the case at hand, the Cores did examine the property upon purchase and they discovered the cable. Neither one of the plaintiffs really contends that the cable was not adequately marked. So, it is not the location of the cable that is the problem with this case. Rather, it is lack of knowledge as to the exact boundaries of the Cores' land that has led to the present dispute.

■ It has long been the law in Arkansas that a property owner has a duty to know the boundaries of his own land. *Jewel Coal & Mining Co. v. Watson,* 176 Ark. 108, 2 S.W.2d 58 (1928); *Jeffries v. Hargus,* 50 Ark. 65, 6 S.W. 328 (1887). In *Jeffries,* the Arkansas Supreme Court was faced with a charge of trespass against a defendant who pled ignorance of the boundaries of his property as a defense. Rejecting this contention, the court stated:

> It was the defendant's duty to know the boundaries of his own land and keep within them, and ignorance thereof would not justify a trespass upon his neighbor's land.

50 Ark. 67, 6 S.W. 328. The same rule can be readily applied to the undisputed facts now before the court. Plaintiffs are arguing that ignorance of the boundaries of their property should act to toll the statute of limitations to the detriment of SWB whose underground cable was clearly marked and its presence known to the complaining parties. The law does not and cannot sanction such a result. Otherwise, a purchaser of land could always contend he didn't really know the boundaries of his property in order to successfully bring a trespass action that would otherwise be time barred.

The court believes that the law imposes a duty upon a purchaser of property to diligently determine the boundaries of his property so as to detect any possible encroachment by entities such as the telephone company. Unlike diligent purchasers, the Cores made little effort during the first twenty years they owned the property to determine if the underground cable crossed their tract or the adjoining land. Apparently, the boundaries were not of great importance to the plaintiffs who chose to leave the land wild and unenclosed until 1986. This duty is not lessened by SWB's representations in 1982 that the cable did not cross the SE ¼ of the NE ¼ since there is no evidence in the pleadings that this was other than a mistake on the part of SWB's office that could have easily been detected by the Cores had they fulfilled their responsibility as property owners to determine the boundaries of the land.

For the reasons set forth above, the court finds that the two year statute of limitations began to run in 1966 when the Cores purchased the aforedescribed 40–

acre tract of land with knowledge of the presence of an underground cable. Accordingly, plaintiffs' claim is time barred and the complaint against SWB will be dismissed with prejudice.

A separate order setting forth findings of the court will be concurrently entered.