(No. 46154.-

THOMAS REID, Appellant, v. EMPLOYERS MUTUAL
LIABILITY INSURANCE COMPANY, Appellee.

*Opinion filed November 27, 1974.*

Griffin, Guinan & Griffin, of Chicago (Michael J.
Guinan and Peter B. Carey, of counsel), for appellant.

Dom J. Rizzi, of Chicago, for appellee.

MR. CHIEF JUSTICE UNDERWOOD delivered the
opinion of the court:

This is a personal injury action brought by plaintiff
against his employer's workmen's compensation insurance
carrier for alleged negligence on the part of the insurance
company in performing safety inspections of the printing
press on which he was injured during the course of his
employment. A jury in the circuit court of Cook County
returned a verdict in favor of plaintiff in the amount of
$100,000, and defendant's post-trial motion for judgment
*n.o.v.* or in the alternative for a new trial was denied. The
appellate court reversed and remanded with directions to
enter judgment in favor of defendant *n.o.v.* on the ground
that the evidence established that plaintiff was guilty of

contributory negligence as a matter of law. (*Reid v. Employers Mutual Liability Insurance Co.* (1973), 14 Ill. App. 3d 174.) We have allowed plaintiff's petition for leave to appeal.

Because of the result we reach, an extended discussion of the facts is not called for. On January 7, 1964, plaintiff was employed by Casper Tin Plate Company as a press wash-up man. His assigned duties that day included the cleaning of a printing press used for lithographing on tin plate. The 25 x 15 foot press had a set of heavy brass rollers toward the front of the machine which required cleaning. Since there were no controls to start and stop the press in the area of these rollers, and since according to plaintiff he could not properly clean the rollers except when they were in motion, plaintiff pushed the start button located at the back of the machine and then walked around toward the front where he stood on a catwalk attached to the frame of the press and proceeded to clean the rollers while they were in motion. The cleaning process involved pouring a solution on the rollers to loosen accumulated ink and then going over the moving rollers lightly with a piece of steel wool held in his hand. While extending his arm out to reach the rollers for this purpose, the cuff of his shirt sleeve caught in one of the rollers, and his right hand was pulled into the press. He was unable to turn off the machine due to the absence of any controls nearby, and it was 10 or 15 minutes before another workman in the plant observed the situation and rendered assistance. No issue is raised as to the extent of the serious injuries to his hand resulting from the mishap. In settlement of a workmen's compensation claim arising from the accident, the defendant, as the workmen's compensation carrier of plaintiff's employer, paid plaintiff a lump-sum settlement of $12,811.64 in addition to medical and hospital payments of $5,806.96.

It is conceded that as an incident to its compensation coverage for Casper Tin Plate Company, defendant had

sent a safety and health consultant to the plant prior to the accident for the purpose of assisting the company in an accident-control program. Plaintiff testified that the printing press on which he was injured had been observed in operation by one of defendant's representatives. An expert witness testified for plaintiff that the press was not equipped with such safety measures as physical barriers to enclose moving parts, deadman's controls which would allow the machine to be turned off from any position in case of emergency; or pressure-limiting devices which would disengage the rollers and release the pressure in the event anything greater than a designated thickness entered the press. The gist of plaintiff's complaint was that in conducting safety inspections of the plant defendant knew or through exercise of reasonable care should have known of the lack of adequate safety mechanisms on the press and that it carelessly and negligently failed to detect and report the dangerous conditions to the employer.

In reversing the judgment entered on the jury verdict in favor of plaintiff, the appellate court concluded that the plaintiff had a safer method available to clean the press and that by ignoring a safe method in favor of a more hazardous one, he was thereby guilty of contributory negligence as a matter of law. It is unnecessary to review the evidence on this point, since in our opinion the judgment of the appellate court must in any event be affirmed on another basis. In its answer to plaintiff's complaint, defendant averred that under the applicable provisions of the Workmen's Compensation Act in effect at the time of the accident, plaintiff, having been covered by the Act and having received compensation pursuant thereto, was barred from maintaining a common-law action for damages against the defendant. For the reasons hereafter stated, we conclude that defendant's answer set forth a good defense.

The statutory provision with which we are primarily concerned in this appeal is that portion of section 5(a) of

the Workmen's Compensation Act in effect at the time of plaintiff's injury which provided as follows: "No common law or statutory right to recover damages from the employer or his employees for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, shall be available to any employee who is covered by the provisions of this Act ***." (Ill. Rev. Stat. 1963, ch. 48, par. 138.5(a).) Also pertinent is section 11, which provided in part: "The compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer ***." (Ill. Rev. Stat. 1963, ch. 48, par. 138.11.) The issue presented for our determination is whether the foregoing provisions contemplate that an employer's workmen's compensation carrier should be amenable to suit as a third-party tortfeasor for alleged negligence in performing the type of safety inspections which occurred here. At the outset, we note that this question will not arise in cases governed by a 1969 amendment to section 5(a) which reads in pertinent part as follows: "No common law or statutory right to recover damages from the employer, his insurer, his broker, any service organization retained by the employer, his insurer or his broker to provide safety service, advice or recommendations for the employer or the agents or employees of any of them for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act ***." Ill. Rev. Stat. 1969, ch. 48, par. 138.5(a).

The question of a compensation carrier's amenability to suit as a third-party tortfeasor is one which has produced substantial activity in the workmen's compensation field since the early 1960's. (See 2 A. Larson, The Law of Workmen's Compensation sec. 72.90, for commentary and an extensive collection of cases.) The

reported decisions have been decided on the basis of the specific provisions and historical background of the particular workmen's compensation legislation under consideration, and as a consequence those cases are of very limited precedential value in the case at bar. Included in this category is *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill.2d 69, in which this court, with three dissents, determined upon the basis of various provisions of the Florida workmen's compensation act and existing Florida precedent that a compensation carrier was not immune from suit under the Florida act for alleged negligence in making safety inspections. It is clear from that opinion, however, that the absence from the Florida statute of any provision such as existed in section 4(g) of the Illinois act, hereinafter discussed, making the compensation carrier "primarily liable" for payment of compensation to the injured employee was an influential factor in the court's holding that the Florida statute did not confer immunity from suit. We note, too, that subsequent legislative action and judicial decisions have changed the law as reflected in some of the cases relied upon in *Nelson* (*e.g., Smith v. American Employers' Insurance Co.* (1960), 102 N.H. 530, 163 A.2d 564, changed by 2B N.H. Rev. Stat. Ann., sec. 281:12 (Supp. 1973); *Fabricius v. Montgomery Elevator Co.* (1963), 254 Iowa 1319, 121 N.W.2d 361, superseded by 6 Iowa Code Ann., sec. 88A.14 (1971); *Mays v. Liberty Mutual Insurance Co.* (3d Cir. 1963), 323 F.2d 174, rejected in *Brown v. Travelers Insurance Co.* (1969), 434 Pa. 507, 254 A.2d 27, and changed by Pa. Stat. Ann., tit. 77, sec. 501 (1974-75 Supp.)). A discussion of the reported cases and the various legislative enactments on the subject may be found elsewhere and need not be repeated here. (See, *e.g.,* Larson; *Brown v. Travelers Insurance Co.*) It suffices to say that there appears to be a definite trend toward the recognition of immunity for compensation carriers in the performance of safety inspections of an employer's premises.

The question now before us must, of course, be resolved in the context of the particular provisions of our workmen's compensation act and its intended scope and purpose. It is evident that a workmen's compensation insurer is not included within the definition of the term "employer" appearing in section 1(a) of the Act (Ill. Rev. Stat. 1963, ch. 48, par. 138.1(a)) nor is the insurer expressly mentioned in sections 5(a) and 11 quoted above. However, this does not necessarily mean that either of the latter two sections contemplate that an employee should have a common-law right of action against the insurer for the type of safety inspections which occurred here.

There are several observations which we deem relevant to a determination of this matter. First, it is apparent that our workmen's compensation act contemplates that an employer may rely on workmen's compensation insurance as a means of fulfilling his liability to his employees under the Act. Sections 2 and 4 of the Act contain various provisions relating to the maintenance of such insurance, and section 4(g) provides that in the event an employer does not pay the compensation for which he is liable, then the workmen's compensation insurer "shall become primarily liable" to pay the compensation required by the Act. In addition, section 4(g) provides: "The insurance carrier may be made a party to the proceedings in which the employer is a party and an award may be entered jointly against the employer and the insurance carrier." (Ill. Rev. Stat. 1963, ch. 48, par. 138.4(g).) We think it is fair to say that workmen's compensation insurance has been recognized by the legislature as an integral part of the workmen's compensation scheme in Illinois. It can also be argued with merit that our act evidences a legislative intent to equate the employer and its compensation carrier at least with respect to their joint liability to injured employees. In this setting, a compensation carrier engaged in making safety inspections as an incident to its compensation coverage is not truly a "third party" in the usual

sense of that term. Upon consideration of all these factors, we believe it is highly questionable that the legislature consciously intended to treat the employer and his compensation insurer differently insofar as immunity from suit as a third-party tortfeasor is concerned.

It is also apparent that the actions of defendant of which plaintiff complains in this case were directly related to its function as a compensation carrier. It is undoubtedly true that the safety inspections conducted by defendant inured to its financial benefit by reducing accidents and thereby reducing its exposure on its workmen's compensation policy. However, it is also obvious that the employees were beneficiaries of such safety inspections and accident-prevention programs. If compensation carriers were held subject to liability for making the type of safety inspections occurring here, it is quite likely that the insurers would choose to escape liability by not making any safety inspections on the premises of its insureds. It is difficult to believe that the legislature would have intended such a result.

Upon consideration of all factors, we construe section 5(a) of the Act in effect at the time of plaintiff's injury as precluding an action by an employee against his employer's compensation insurer for the type of safety inspections conducted by defendant in this case. A contrary result would in our opinion create an inconsistency which the legislature could not have intended.

Accordingly, the judgment of the appellate court reversing the decision of the trial court and remanding the cause with directions to enter judgment *n.o.v.* in favor of defendant is affirmed.

*Judgment affirmed.*