James D. DANIELS, Plaintiff-Appellant,

v.

**McKAY MACHINE COMPANY and Wean United, Inc., Defendants,**

and

**Dow Chemical Co., Defendant-Appellee.**

No. 79–1461.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 25, 1979.

Decided Oct. 17, 1979.

Dennis A. Brandt, Granite City, Ill., for plaintiff-appellant.

Larry E. Hepler, Edwardsville, Ill., for defendants.

Before SPRECHER and WOOD, Circuit Judges, and CAMPBELL, Senior District Judge.*

SPRECHER, Circuit Judge.

The questions posed by this diversity case on appeal are (1) whether a state court's denial of summary judgment is the law of the case when, after removal, the federal court is faced with a similar motion for summary judgment; and (2) whether, under Illinois law, strict products liability applies to the lessor or seller of equipment causing injury when the lessor or seller is not in the business of selling such equipment and the lease or sale at issue is a one-time isolated transaction.

I

In 1953–1954, Dow Chemical Company installed a piece of equipment known as a "hot shear" at its manufacturing plant at Madison, Illinois. Dow modified the equipment in 1955, 1964 and 1969. In 1969, Dow leased its Madison plant and equipment to Phelps-Dodge Aluminum Products Corporation, including the hot shear. In 1971, Phelps-Dodge merged with Consolidated Aluminum Corporation, later known as Conalco.

The plaintiff was employed by Conalco, and in 1972 was injured when his right hand and arm were caught in the hot shear machine. In 1973, Conalco purchased the plant and equipment from Dow, including the hot shear machine.

The plaintiff originally filed his complaint in state court, alleging causes of action in several counts against several de-

* Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, sitting by designation.

fendants. On December 10, 1976, Dow moved in the state court for summary judgment on Count I, a products liability count which applied only to Dow, attaching the affidavit of C. C. Armstrong, Manager of the Engineering and Metal Products Department of Dow. The affidavit stated in effect that Dow was not in the business of manufacturing or selling hot shear lines or any component parts, and that the sale of the subject hot shear line was a one-time isolated sale.

On July 13, 1977, the state court entered an order denying Dow's motion for summary judgment. On August 10, 1977, Dow filed its "motion to reconsider" the court's order of denial. The case was removed to federal court on April 14, 1978, prior to the state court's taking any action on the motion to reconsider.

On August 3, 1978, Dow filed a motion for summary judgment in federal court, attaching three affidavits, including those of Armstrong, Louis H. Washauer and Lloyd F. Lockwood. Armstrong's affidavit was the same one filed in the state court. The other two were substantially the same as Armstrong's affidavit.

The plaintiff filed a motion to strike Dow's motion, contending that the state court had denied the same motion, which then became the law of the case. Plaintiff also filed a motion to strike Dow's affidavits on the grounds that they were not made upon personal knowledge, that they set forth "conclusory facts," and that they set forth opinions and facts as to which the affiants were not competent to testify. Finally, the plaintiff opposed Dow's motions on the merits.

A magistrate who heard oral arguments on the motions recommended that summary judgment be entered on Count I in favor of Dow on the ground that Dow was not in the business of manufacturing, leasing or selling hot shear lines or component parts, and that the lease and later sale of the plant and equipment including the hot shear was an isolated transaction not in the usual course of Dow's business.

The plaintiff filed objections to the magistrate's proposed findings and recommendations but the district court found them correct in all respects and entered summary judgment for Dow. The court also made an express determination that there is no just reason for delay of any appeal. The plaintiff has appealed.

## II

Plaintiff's first argument to be considered is whether, inasmuch as the three affidavits filed in support of the second motion for summary judgment are substantially the same in content as the single affidavit filed in support of the first motion, the first denial of the motion by the state court is the law of the case and binding upon the federal court.

After a case has been removed to federal court, "[a]ll . . . orders . . . had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450.

 Under Illinois practice, if multiple parties or multiple claims for relief are involved, an otherwise final judgment as to one or more but fewer than all of the parties or claims is considered final and appealable only if the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal. Ill.Rev.Stat., c. 110A, § 304. Failure to make the express written finding results in an interlocutory order which is subject to revision and may be modified or vacated at any time. Inasmuch as the requisite express finding was not made in this case, the state court's denial of summary judgment was an interlocutory order as to the single count of the complaint to which it applied. Cf. *Kirby v. P. R. Mallory & Co.*, 489 F.2d 904, 913 (7th Cir. 1973), *cert. denied*, 417 U.S. 911, 94 S.Ct. 2610, 41 L.Ed.2d 215 (1974).

Therefore the denial by the state court would not have been the law of the case if the proceeding had remained in the state court. Also, if the case had originated in the federal court, a denial of summary

judgment would not have been the law of the case. *See Dictograph Products Co. v. Sonotone Corp.*, 230 F.2d 131, 134–36 (2d Cir. 1956). In *Burns v. Massachusetts Institute of Technology*, 394 F.2d 416, 418 (1st Cir. 1968), the court said:

Much of the plaintiff's brief is devoted to the contention that the additional affidavits made no material change, and that since they did not, the granting of summary judgment was erroneous because the first ruling constituted the law of the case. . . . However, the court was not bound to perpetuate error if it later believed it had committed such.

The same result occurs when the first motion is denied by the state court and the second is granted by the federal court. As the Supreme Court said in *General Investment Co. v. Lake Shore & Mich. So. Ry. Co.*, 260 U.S. 261, 267, 43 S.Ct. 106, 110, 67 L.Ed. 244 (1922):

The state court's ruling was purely interlocutory, and its status in this regard was not affected by the removal. Being interlocutory, it was subject to reconsideration, and would continue to be so up to the passing of a final decree. Had the cause remained in the state court, the power to reconsider would have been in that court, but when the removal was made the power passed with the cause to the District Court. Of course in the latter the ruling was to be treated with respect, but not as final or conclusive. *Garden City Manufacturing Co. v. Smith*, 9 Fed.Cas. p. 1153; *Bryant v. Thompson*, 8 Cir., 27 Fed. 881. And see *Goldey v. Morning News*, 156 U.S. 518, 522, 15 S.Ct. 559, 39 L.Ed. 517.

In this case, the interlocutory nature of the state court's denial of summary judgment was further established by the timely motion to reconsider, which had been filed in the state court and which remained pending and unresolved at the time of removal of the case to the federal court.

## III

■ Plaintiff next contended that Dow's three supporting affidavits were not made upon personal knowledge, that they set forth conclusory or conclusionary facts, and set forth opinions and facts as to which the affiants were not competent to testify.[1]

Affiant Armstrong stated that he was the Manager of the Engineering and Metal Products Department of Dow; Washauer stated that he was the Business Services Manager in the Primary Metals Business of the Inorganic Chemicals Department of Dow; and Lockwood stated that he was Group Leader, Magnesium Chemicals and Metals, Technical Service and Development, in the Inorganic Chemicals Department of Dow. Washauer also specifies the positions he has held with Dow since 1954 and Lockwood specifies those he has held with Dow since 1955.

Each stated that he was familiar with the metals business of Dow and each stated that he was familiar with the hot shear line at the Madison plant, which was installed in the 1950's.

Each stated substantially the following facts:

(1) Dow is not in the business of manufacturing or selling hot shear lines or their component parts.

(2) Dow did not manufacture or design or sell, nor was it in the business of manufacturing or selling McKay Levellers, one of

---

1. F.R.Civ.P. 56(e) provides:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

which was a component part of the Madison hot shear line. This statement was in response to facts alleged in another count against another defendant to the effect that McKay Machine Company designed, manufactured and sold the hot shear machine for use in the Madison plant.

(3) The sale by Dow of the hot shear line was a one-time isolated sale of manufacturing equipment which had been installed in Dow's premises, which sale was included in the sale of Dow's entire manufacturing facility at Madison.

(4) Dow does not now nor did it in the past manufacture or sell hot shear lines or their component parts as a part of the regular business of Dow.

None of the above statements in the three affidavits was qualified as made on information and belief and none was denied or controverted by counter affidavits. Each statement was of a fact and not opinion and was made on personal knowledge by a person competent to testify thereto. The motion to strike the affidavits was correctly denied.

### IV

■ In *Suvada v. White Motor Company*, 32 Ill.2d 612, 210 N.E.2d 182 (1965), the Illinois Supreme Court adopted the strict liability doctrine expressed in § 402A of the American Law Institute's Restatement of Torts Second (1965), which imposes strict products liability "if the seller is engaged in the business of selling such a product." [2]

Comment *f* of § 402A includes the following explanations of the business of selling requirement:

> The rule does not, however, apply to the occasional seller of food or other such products who is not engaged in that activity as a part of his business.

> \* \* \* \* \* \*

> This Section is also not intended to apply to sales of the stock of merchants out of the usual course of business, such as execution sales, bankruptcy sales, bulk sales, and the like.

Comment *f* also expresses the reason for the seller being engaged in the business as a requisite to strict products liability:

> The basis for the rule is the ancient one of the special responsibility for the safety of the public undertaken by one who enters into the business of supplying human beings with products which may endanger the safety of their persons and property, and the forced reliance upon the undertaking on the part of those who purchase such goods. This basis is lacking in the case of the ordinary individual who makes the isolated sale, and he is not liable to a third person, or even to his buyer, in the absence of his negligence. An analogy may be found in the provision of the Uniform Sales Act, § 15, which limits the implied warranty of merchantable quality to sellers who deal in such goods; and in the similar limitation of the Uniform Commercial Code, § 2–314, to a seller who is a merchant.

The three affidavits attached to Dow's motion for summary judgment each contained substantially the following:

> [T]he Dow Chemical Company is not in the business of manufacturing or selling Hot Shears Lines or any of their component parts.

> \* \* \* \* \* \*

---

2. § 402A provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

 (a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

 (a) the seller has exercised all possible care in the preparation and sale of his product, and

 (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

[T]he sale of the Hot Shear Line was a one-time isolated sale of manufacturing equipment which had been installed on Dow's premises, which sale was included in the sale of Dow's entire manufacturing facility at said location.

Since these facts were not denied, the plaintiff is left with the fact that Dow modified the shear line in 1955, 1964 and 1969, according to Count I of the complaint. Plaintiff's brief summarizes his argument as follows:

Far beyond simply selling the equipment, Dow participated in the design, assembly, manufacture, and modification of this hot shear line and its component parts, and did so on a regular basis in the regular course of its business.

In two cases the Illinois courts have held squarely against plaintiff's contention. In *Siemen v. Alden*, 34 Ill.App.3d 961, 341 N.E.2d 713 (1975), the court said:

Plaintiff contends that because the sale of the saw occurred within the scope and conduct of defendant's business, and because defendant modified the machine to suit his own purposes, thereby creating the condition which led to plaintiff's injury, defendant had a relationship to the saw sufficient to subject him to strict liability. Plaintiff's argument fails to overcome the clear requirement of the rule that the seller be engaged in the business of selling the particular product. In the instant case, defendant asserted and plaintiff has not denied that defendant's only sale of a saw or sawmill equipment was to plaintiff. It is therefore apparent that the sale is an isolated transaction and does not come within the provisions of 402A.

*Id.* at 963, 341 N.E.2d at 715.

In *Luna v. Rossville Packing Co.*, 54 Ill. App.3d 290, 12 Ill.Dec. 115, 369 N.E.2d 612 (1977), the injured employee had fallen into a conveyor apparatus that was "built from scratch" by the individual defendant owners for their cannery business, which business including the conveyor was leased to the defendant corporation. The court said:

At no time has the corporation, or either of the brothers individually or as partners, engaged in the manufacture of conveyors. The conveyor system in question was the only one ever built by defendants and has always been used in the operation of the plant.

\* \* \* \* \* \*

Had defendant sold the conveyor and the rest of his business assets to a third party, it would have been a bulk sale, out of the regular course of business, not subject to strict liability. By analogy to the bulk sale situation, the present lease arrangement, essentially a "bulk lease," should not subject defendants to strict liability.

Despite plaintiff's argument, we are not persuaded that defendants here were in the business of leasing conveyors. It is uncontested that this was the only conveyor ever built or leased by defendants in their 30 years in the cannery business. The conveyor was never intended for sale and was never moved from the spot on which it was constructed. With this background, we find that the lease in the instant case was an isolated transaction and therefore not within the provisions of section 402A.

*Id.* at 291–92, 12 Ill.Dec. at 116–117, 369 N.E.2d at 613–14.

Depositions which the plaintiff relied upon establish that the hot shear line was never moved from the place where it was constructed in the Madison plant. For example, see Page deposition at A.122.

Faced with the *Siemen* and *Luna* cases, the plaintiff purports to find some comfort in *Crowe v. Public Building Commission*, 74 Ill.2d 10, 23 Ill.Dec. 80, 383 N.E.2d 951 (1978), where the Illinois Supreme Court held that § 402A applies to former lessors of defective equipment. However, in *Crowe* the court expressly found that the former lessor "was engaged in the business of leasing equipment" which caused the injury and was a "commercial lessor" of such equipment. 74 Ill.2d at 12 and 15, 383 N.E.2d at 952 and 953. This fact distinguishes *Siemen*, *Luna* and this case from *Crowe*.

For the reasons expressed above, the judgment appealed from is affirmed.

AFFIRMED.