MARY ANN GOETZ, Plaintiff-Appellant, *v.* AVILDSEN TOOL & MACHINES, INC., *et al.*, Defendants-Appellees.

First District (4th Division)   No. 78-1624

Opinion filed March 27, 1980.

Ronald S. Fishman, of Chicago, for appellant.

Schaffenegger, Watson and Peterson, Ltd., of Chicago (Jack L. Watson, of counsel), for appellees.

Mr. PRESIDING JUSTICE LINN delivered the opinion of the court:

Plaintiff, Mary Ann Goetz, appeals from an order of the circuit court of Cook County dismissing her action against defendants, Avildsen Tool and Machines, Inc. (Avildsen), and Employers Insurance of Wausau, Inc. (Employers), Avildsen's insurer, for injuries sustained during the course of her employment with Avildsen. The trial court granted defendants' motion to dismiss plaintiff's second amended complaint on the ground that the complaint failed to state a cause of action.

We affirm.

The allegations of the second amended complaint set forth that Avildsen owned and operated a manufacturing plant which included an automatic drill hopper department. Plaintiff was employed by Avildsen as an operator of an automatic drill hopper machine. On December 10, 1974, while operating the hopper unit, plaintiff's right hand and arm were caught in the machine and the resulting serious injury necessitated amputation of the arm.

Subsequently, plaintiff's attorney initiated an investigation to determine if a third-party action existed against the manufacturers of the drill hopper machine and the machine's component parts. Plaintiff's attorney wrote to Employers requesting the identity of the manufacturers of the machine and the machine's component parts. On September 30, 1975,

Employers' claims supervisor responded by letter to plaintiff's attorney, indicating that Employers had conducted its own investigation to determine the feasibility of a third-party action. The claims supervisor's letter included the following:

"As part of our investigation of the above case dating to December 10, 1974, we conducted a third party investigation with the same thoughts in mind that you would undoubtedly have reference third party possibilities. Our investigation was unable to uncover any possibilities whatsoever in that direction. I therefore feel that any further examinations of the machine would not be beneficial."

Plaintiff filed her suit on January 9, 1976. On February 18, 1976, the trial court ordered defendants to allow plaintiff and her representative to inspect the machine and to copy all maintenance records relating to the machine. On March 12, 1976, plaintiff's attorney and engineer examined the machine. On March 24, 1976, the vice president of Avildsen's manufacturing department wrote Employers stating that only a full set of blueprints of the machine was available and no other manuals or written materials concerning the machine unit existed. On June 23, 1976, plaintiff's engineer reported that the machine as manufactured did not have proper safety guards. The engineer was unable to determine the identity of any component parts manufacturers.

On August 17, 1976, Avildsen's attorney reported to plaintiff's attorney that the drill hopper machine had been manufactured by one of Avildsen's employees. On October 12, 1976, plaintiff propounded interrogatories to defendants concerning the manufacture of the machine and requested the identity of all component parts manufacturers. Avildsen filed its answers to the interrogatories in February of 1977, after the statute of limitations had expired on plaintiff's third-party action. Employers never answered the interrogatories.

In her four-count action, plaintiff seeks to hold Avildsen strictly liable in tort for manufacturing a defective machine, the use of which allegedly caused plaintiff's serious injury. Further, plaintiff seeks to hold both defendants liable for conspiracy, negligent investigation of plaintiff's third-party action, and fraudulent misrepresentation. On motion, the trial court dismissed plaintiff's second amended complaint for failure to state a cause of action.

Plaintiff's first count, premised upon strict liability in tort, alleges that Avildsen had a dual status as the manufacturer of the machine unit and as employer of plaintiff. Plaintiff further asserts that by virtue of Avildsen's dual capacity status, plaintiff may still pursue Avildsen in this proceeding as manufacturer of a defective machine unit despite the section 5(a)

immunity conferred upon employers under the Workmen's Compensation Act. Ill. Rev. Stat. 1977, ch. 48, par. 138.5(a).

The second amended complaint sets forth the facts previously noted and also details the specific defects of the machine. Additionally, the complaint charges that Avildsen exposed plaintiff to an unreasonable hazard because "had this machine been produced by a manufacturer who would ordinarily have produced this kind of machine for the general public, the machine would have been safer and more reasonably fit for the purposes for which it was intended."

Count II alleges that defendants conspired to deny plaintiff access to information "so as to deny plaintiff an opportunity to file a third party complaint against any other persons * * *." The conspiracy is alleged to have monetarily benefited defendants who believed "they could face or be involved in a third party action by any persons responsible to the plaintiff." Count II further states that the defendants concealed information concerning plaintiff's right to bring a third-party action against other persons, including component parts manufacturers.

Count III alleges that the defendants were negligent in their investigation of plaintiff's possible third-party action because they: (1) failed to determine whether or not a valid third-party action existed; (2) failed to obtain any engineers or other experts to inspect the machine to determine whether any component parts were defective; and (3) negligently wrote a letter to plaintiff's attorney indicating that no third-party action was feasible.

Count IV asserts a claim for relief predicated upon fraud. It is contended that defendants, through their employees and agents, knowingly made a false statement concerning the existence of a third-party action. The count further states that plaintiff, to her detriment, relied on the representation, which was made by defendants with intent to deceive plaintiff.

OPINION

## I

Plaintiff first contends the trial court erred in dismissing her strict liability count against Avildsen. Plaintiff argues that since Avildsen is being sued in its dual or second capacity as manufacturer of an allegedly defective machine, section 5(a) of the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.5(a)) should not bar her strict liability action against her employer. Section 5(a) provides in pertinent part:

"No common law or statutory right to recover damages from the employer, * * * for injury or death sustained by any employee

while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, * * *." Ill. Rev. Stat. 1977, ch. 48, par. 138.5(a).

It is apparent from the language of the statute that an employer is immune from a common law or statutory action for damages brought by an employee for injuries sustained during the course of employment. The "[W]orkmen's [C]ompensation [A]ct contemplates that an employer may rely on workmen's compensation insurance as a means of fulfilling his liability to his employees under the Act." (*Reid v. Employers Mutual Liability Insurance Co.* (1974), 59 Ill. 2d 194, 199, 319 N.E.2d 769, 771.) Plaintiff seeks to avoid the effect of section 5(a) by asserting the applicability of the dual capacity doctrine to the facts alleged in count I.

■■ The dual capacity doctrine permits recovery by the employee from the employer if the injuries resulted from a breach of a duty independent of the duty of an employer *qua* employer. (See 2A A. Larson, Workmen's Compensation §72.80, at 14—112, 14—117 (1976).) This doctrine recently was invoked by our supreme court in *Smith v. Metropolitan Sanitary District* (1979), 77 Ill. 2d 313, 396 N.E.2d 524. In *Smith*, an employee of a joint venture filed an application before the Illinois Industrial Commission to adjust his claim against the joint venture for injuries sustained while operating a truck. He then instituted a civil action in the circuit court against a member of the joint venture who had leased the allegedly defective truck to the joint venture pursuant to an express agreement. The agreement provided that each joint venturer could, on an independent basis, supply equipment for the project at a fixed rental rate.

The supreme court dismissed counts I and II of the action which were premised upon violations of the Structural Work Act (Ill. Rev. Stat. 1973, ch. 48, par. 60) and negligence. The court reasoned that the defendant's duty to the employee as an agent of the joint venture was co-extensive with that of the principal, the joint venturer. Accordingly, the defendant was entitled to the protection of section 5(a) (Ill. Rev. Stat. 1977, ch. 48, par. 138.5(a)) by virtue of his status as member of the joint venture. This status, however, did not confer immunity to the defendant from the employee's third count based on strict liability in tort, since defendant occupied a dual capacity as lessor of the allegedly defective truck.

Prior to reaching the conclusion that section 5(a) did not bar the employee's strict liability action against the member of the joint venture in his capacity as an independent supplier of trucking equipment, the court determined that defendant functioned in a dual capacity: first, as a member of the employing joint venture; and second, as an independent lessor of trucking equipment. Since defendant's second capacity as lessor gave rise to obligations independent of his obligations as employer, the

supreme court concluded defendant could also be sued in his capacity as lessor.

The court reasoned that "[t]he allegedly defective truck which caused plaintiff's injuries was not a tool *furnished* by defendant as a member of the joint venture, but was equipment leased to the joint venture under the express terms of the joint-venture agreement." (Emphasis added.) (77 Ill. 2d 313, 319, 396 N.E.2d 524, 527.) Noting that a lessor of a defective vehicle is held to the same strict liability standards as a manufacturer or seller, the court reasoned that defendant's liability as a lessor of equipment should not depend upon "whether it was solely a lessor or occupied the coincidental status of a member of the joint venture." 77 Ill. 2d 313, 320, 396 N.E.2d 524, 528.

■■ In *Smith*, the supreme court explained the test to determine whether an employer occupies a dual capacity:

> " '[A]n employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as employer.' (2A A. Larson, Workmen's Compensation sec. 72.80, at 14—112 (1976). See also Kelly, *Workmen's Compensation and Employer Suability: The Dual-Capacity Doctrine*, 5 St. Mary's L.J. 818 (1974).) Professor Larson explains that the decisive test in applying the dual capacity doctrine 'is not concerned with how separate or different the second function of the employer is from the first but with whether the second function generates obligations unrelated to those flowing from the first, that of employer.' (2A A. Larson, Workmen's Compensation sec. 72.80, at 14—117 (1976).) A mere separate theory of liability against the same legal person as the employer is not a true basis for use of the dual capacity doctrine; the doctrine, instead, requires a distinct separate legal *persona*. (2A A. Larson, Workmen's Compensation sec. 72.80 (Supp. 1979).) Cited examples showing an employer in a dual capacity include: a shipowner employing stevedores (*Reed v. Steamship Yaka* (1963), 373 US. 410, 10 L. Ed. 2d 448, 83 S. Ct. 1349; a landowner employing persons to work on his property (*Marcus v. Green* (1973), 13 Ill. App. 3d 699); and a chiropractor treating his own employee's work-related injuries (*Duprey v. Shane* (1952), 39 Cal. 2d 781, 249 P.2d 8)." (*Smith v. Metropolitan Sanitary District* (1979), 77 Ill. 2d 313, 318-19, 396 N.E.2d 527. See also *Laffoon v. Bell & Zoller Coal Co.* (1976), 65 Ill. 2d 437, 359 N.E.2d 125; *Douglas v. E & J Gallo Winery* (1977), 69 Cal. App. 3d 103, 137 Cal. Rptr. 797; Note, *Dual Capacity Doctrine: Third Party*

*Liability of Employer-Manufacturer In Products Liability Litigation,* 12 Indiana L. Rev. 553 (1979); Mitchell, *Products Liability, Workmen's Compensation and the Industrial Accident,* 14 Duquesne L. Rev. 349, 357-58 (1976).)

It is thus apparent the dual capacity doctrine requires that the second capacity be one which creates legal obligations on the part of the employer that are separate, distinct, and independent of those obligations assumed by an employer to an employee.

Accordingly, to conclude that a complaint sets forth the dual capacity of an employer, an underlying determination must be made that the facts alleged establish distinct duties and obligations which are generated by that second capacity and unrelated to those obligations and duties flowing from the first, that of employer. (*Smith v. Metropolitan Sanitary District* (1979), 77 Ill. 2d 313, 318-19, 396 N.E.2d 524, 527, citing 2A A. Larson, Workmen's Compensation §72.80, at 114-17 (1976).) It is only then that a complaint alleges the existence of a second capacity and the employer's status as employer is merely coincidental. See generally 2A A. Larson, Workmen's Compensation §72.80 (1976).

Our examination of count I of the second amended complaint fails to disclose allegations of ultimate facts required to support a dual capacity contention. In fact, the allegations of count I, taken as true for purposes of ruling upon a motion to dismiss (*Acorn Auto Driving School, Inc. v. Board of Education* (1963), 27 Ill. 2d 93, 187 N.E.2d 722), clearly establish that Avildsen's duty to plaintiff flows from the employment relationship. At most, count I asserts Avildsen constructed the machine for its own uses and purposes as an aid in its principal manufacturing business. Thus, the construction of the machine was auxiliary to Avildsen's principal manufacturing operation.

We note particularly that the allegations of count I *do not* assert any obligation independent of the obligation imposed upon Avildsen as an employer. Specifically, count I fails to allege activity on the part of Avildsen indicating that Avildsen was involved in the business of manufacturing and selling the drill hopper machine. The allegation of such activity is necessary to establish Avildsen's second function as a manufacturer held to strict liability standards. A manufacturer must be in the business of selling the allegedly defective product to be held strictly liable in tort. *Luna v. Rossville Packing Co.* (1977), 54 Ill. App. 3d 290, 369 N.E.2d 612; *Siemen v. Alden* (1975), 34 Ill. App. 3d 961, 341 N.E.2d 713. See also *Daniels v. McKay Machine Co.* (7th Cir. 1979), 607 F.2d 771.

In *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182, our supreme court adopted the strict liability doctrine expressed in section 402A of the Restatement of Torts, which imposes liability if "the seller is engaged in the business of selling such a product, * * *"

(Restatement (Second) of Torts §402A(1)(a) (1965).) The appellate court in *Siemen v. Alden* (1975), 34 Ill. App. 3d 961, 341 N.E.2d 713, subsequently applied the "clear requirement of the rule that the seller be engaged in the business of selling the particular product" (34 Ill. App. 3d 961, 963, 341 N.E.2d 715), and held that the sale involved there was an isolated transaction and not within the provisions of section 402A.

In *Luna v. Rossville Packing Co.* (1977), 54 Ill. App. 3d 290, 369 N.E.2d 612, the court also applied the strict liability requirement that a seller or manufacturer must be engaged in the business of selling or manufacturing the defective product. In *Luna*, the injured employee had fallen into a conveyor apparatus that was "built from scratch" by the individual defendant owners for their cannery business. The business, including the conveyor, was leased to the defendant corporation. Prior to finding that the lease was an isolated transaction and not within the provisions of section 402A, the court noted:

> "At no time has the corporation, or either of the brothers indi-vidually or as partners, *engaged in the manufacture of convey-ors. The conveyor system in question was the only one ever built by defendants and has always been used in the operation of the plant.*" (Emphasis added.) 54 Ill. App. 3d 290, 291, 369 N.E.2d 612, 613.

Recently, the strict liability principles articulated in *Luna* and *Siemen* were affirmed by the Seventh Circuit in *Daniels v. McKay Machine Co.* (7th Cir. 1979), 607 F.2d 771. In *Daniels*, Dow Chemical Company installed a piece of equipment known as a "hot shear" at its manufacturing plant. Dow subsequently modified the equipment and leased the plant and equipment to Conalco Corporation. Plaintiff, an employee of Conalco, was injured by using the allegedly defective equipment and thereafter instituted a strict liability action against Dow Chemical Company. One year later, Conalco bought the plant from Dow. The district court granted summary judgment on the strict liability claim in favor of Dow on the grounds that Dow was not in the business of manufacturing or selling the hot shear lines and the sale of the plant was an isolated transaction. The Seventh Circuit affirmed, noting that Dow's uncontested affidavits established it was not in the business of manufacturing or selling hot shear lines. (607 F.2d 771, 775-76.) In concluding that strict liability in tort was not applicable, the court relied upon *Siemen* and *Luna*, and also quoted Comment f of section 402A, which explained the "Business of selling requirement":

> " 'The rule does not, however, apply to the occasional seller of food or other such products who is not engaged in that activity as a part of his business.

* * *

The basis for the rule is the ancient one of the special responsibility for the safety of the public undertaken by one who enters into the business of supplying human beings with products which may endanger the safety of their persons and property, and the forced reliance upon the undertaking on the part of those who purchase such goods. This basis is lacking in the case of the ordinary individual who makes the isolated sale, and he is not liable to a third person, or even to his buyer, in the absence of his negligence. An analogy may be found in the provision of the Uniform Sales Act, §15, which limits the implied warranty of merchantable quality to sellers who deal in such goods; and in the similar limitation of the Uniform Commercial Code, §2—314, to a seller who is a merchant.' " (*Daniels v. McKay Machine Co.* (1979), 607 F.2d 775, citing Restatement (Second) of Torts §402A, comment f (1965).)

See also G. Calabresi, The Costs of Accidents—A Legal and Economic Analysis 50-51 (1970); Keeton, *Products Liability—Some Observations about Allocation of Risks*, 64 Mich. L. Rev. 1329, 1333-34 (1966); Restatement (Second) of Torts §402, comment c (1965).

It is apparent from the face of the second amended complaint that Avildsen was, at best, an occasional manufacturer of a drill hopper machine. Avildsen did not engage in that activity for sale to others, but for its own use, and thus could not be described as being in the "business of selling such a product." Unlike the defendant in *Smith*, who through an express agreement entered into the business of leasing equipment for profit, Avildsen did not invite or solicit the purchase of the machine, nor did it reap profits from manufacturing and selling the unit. *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182.

We note that other jurisdictions have considered and rejected the applicability of the doctrine of strict liability in tort for injuries sustained under circumstances similar to those in the instant case. *DePaolo v. Spaulding Fibre Co.* (1979), ___ N.H. ___, 397 A.2d 1048; *Douglas v. E. & J. Gallo Winery* (1977), 69 Cal. App. 3d 103, 137 Cal. Rptr. 797; *Shook v. Jacuzzi* (1976), ___ Cal. App. 3d ___, 129 Cal. Rptr. 496.

■■ Accordingly, for the reasons noted, we conclude that Avildsen's manufacture of the machine did not give rise to any obligations to plaintiff which were distinct or independent from those generated by the employment relationship. We find, therefore, that the trial court properly dismissed count I of the second amended complaint for failure to state a cause of action in strict liability in tort.

## II

Plaintiff next contends that count II of the second amended complaint states a valid cause of action for civil conspiracy. It is well

settled that the mere allegation of a conspiracy does not in and of itself constitute an allegation of wrongful acts upon which liability may be predicated. Rather, it is the act performed in pursuance of the agreement that may result in liability. *Montgomery Ward & Co. v. United Retail, Wholesale & Department Store Employees of America, C.I.O.* (1948), 400 Ill. 38, 79 N.E.2d 46; *Coffey v. MacKay* (1972), 2 Ill. App. 3d 802, 277 N.E.2d 748; *B. R. Paulsen & Co. v. Lee* (1968), 95 Ill. App. 2d 146, 237 N.E.2d 793; *Bertash Market Co. v. Brown* (1966), 70 Ill. App. 2d 8, 217 N.E.2d 362; *Skolnick v. Nudelman* (1966), 71 Ill. App. 2d 424, 218 N.E.2d 775.

The allegations of count II fail to disclose a wrongful act upon which liability can be predicated. Plaintiff asserts both Avildsen and Employers refused to allow her to inspect the machine which injured her. Thus she "was required to file a lawsuit" to obtain the information she was seeking. Subsequently, Employers responded negatively to her attorney's requests for inspection. Employers also told plaintiff's attorney that its investigation failed to discover any basis for a third-party action. Thereafter, plaintiff filed suit and began discovery procedures.

In August 1976, Avildsen informed plaintiff's attorney that an employee of Avildsen designed the machine. In October, plaintiff submitted interrogatories requesting identifying information about component parts manufacturers. Avildsen responded in February of 1977, after the statute of limitations had expired on plaintiff's possible third-party action.

Defendant Avildsen argues that plaintiff had no right to the information she requested prior to her instituting a lawsuit and beginning discovery proceedings since the parties were adversaries in a concurrent workmen's compensation proceeding before the Illinois Industrial Commission. We agree.

Plaintiff does not set forth the ultimate facts in her amended complaint which would give rise to a duty owed by defendants to plaintiff to disclose the information plaintiff sought. (See *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617.) Nor does plaintiff point to pertinent authority to support her position of a claimed duty on the part of Avildsen. When denied access to the information, plaintiff appropriately sought the information through legal action and discovery. Likewise, defendant's failure to answer the interrogatories should have been disposed of through the request for sanctions (Ill. Rev. Stat. 1975, ch. 110A, par. 219(c)) or for protective orders (Ill. Rev. Stat. 1975 ch. 110A, par. 201(c)) in accordance with the appropriate discovery procedures.

Supreme Court Rule 219(a) provides in pertinent part: "* * * [I]f a party fails to answer any interrogatory served upon him, * * * the proponent of the * * * interrogatory * * * may on like notice move for

an order compelling an answer \* \* \*." (Ill. Rev. Stat. 1975, ch. 110A, par. 219(a).) Sanctions also could be invoked against defendants for failure to comply with discovery orders. Ill. Rev. Stat. 1975, ch. 110A, par. 219(c).

■ For the reasons noted, coupled with the fact of plaintiff's failure to diligently pursue discovery and thereby obtain the information sought by her, we find plaintiff has failed to state a cause of action for conspiracy against defendants. It was proper for the trial court to dismiss count II.

### III

Plaintiff next contends she has asserted a valid cause of action against defendants on the grounds that defendants negligently investigated the feasibility of plaintiff's third-party action which plaintiff sought to pursue and that by virtue of such negligence plaintiff was damaged.

Plaintiff asserts the defendants were careless and negligent in failing to retain experts to inspect the automatic drill hopper machine so as to determine whether or not any component parts were defectively manufactured, or whether or not there were any third parties who might have been legally responsible for plaintiff's serious injury.

Plaintiff takes the position that, even though the defendants gratuitously investigated the possibility of a third-party claim, the defendants nevertheless owed a duty to plaintiff to carry out their investigation with all reasonable care. Plaintiff further posits that since the defendants carried out the investigation in a perfunctory and careless manner, the defendants are responsible for the consequent injury to plaintiff—the loss of her third-party action.

The allegations in plaintiff's complaint, however, assume that a valid third-party action actually existed. Further, as pointed out by defendants, plaintiff has not pointed to any legal authority which holds an insurance company liable for failure to discover a viable cause of action for an injured party.

In support of her contention that defendants were negligent, plaintiff points to the letter sent to plaintiff's counsel by Employers' claims supervisor indicating, "\* \* \* Our investigation was unable to uncover any possibilities whatsoever in that direction. I therefore feel that any further examinations of the machine would not be beneficial." Plaintiff cites *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769, for the general proposition that one who voluntarily undertakes duties he has no obligation to perform must, nonetheless, perform them in a careful, nonnegligent manner.

*Nelson* involved a claim against an insurance company which had undertaken safety inspections at a construction site and failed to discover certain hazards located there. Nelson, however, was decided prior to the 1969 amendment to the Workmen's Compensation Act (Ill. Rev. Stat.

1969, ch. 48, par. 138.5(a)), which specifically excludes, under certain circumstances, actions by employees against an employer's insurer. Ill. Rev. Stat. 1975, ch. 48, par. 138.5(a); see also *Reid v. Employers Mutual Liability Insurance Co.* (1974), 59 Ill. 2d 194, 319 N.E.2d 769.

■■ Additionally, we note, as we did previously, that defendants did not voluntarily seek to advise plaintiff of her rights. Defendants responded negatively to plaintiff's attorney's requests for information and indicated they had not discovered the availability of any third-party action. Plaintiff filed suit and if she had appropriately utilized the discovery process, she could have obtained the identity of the parties necessary to a third-party action. We find that count III of the second amended complaint fails to set forth ultimate facts which establish that defendants had a legal duty to investigate and seek out possible third-party actions for plaintiff's benefit. An allegation of duty on the part of defendants to plaintiff is an essential ingredient in asserting a valid cause of action for negligence. (See *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617.) Count III was properly dismissed.

## IV

Finally, plaintiff contends that count IV of her second amended complaint states a valid cause of action for fraud. It is plaintiff's position that defendant's statement to her, to the effect that plaintiff had no valid third-party action, was a false statement and known to be false by the defendants when made. Plaintiff further asserts that defendants, in the exercise of ordinary care, should have known the statement to be false.

In count IV, plaintiff asserts that in consequence of certain information being available to defendants but not available to her, plaintiff was compelled to rely on the representation made by the defendants. Furthermore, plaintiff contends that the false representation projected by the defendants amounted to fraud and deceit or constructive fraud and that such representation was made with the intention of deceiving plaintiff. As a result, plaintiff claims she was injured by the defendants' conduct in that ultimately she lost her third-party claim by the running of the statute of limitations.

■■ Fraud must be pleaded with specificity, particularity, and certainty. In asserting a legally sufficient cause of action for fraud, it must be alleged that the party: (1) made representation of material fact as opposed to an opinion; (2) the representation made was untrue; (3) the party making the representation knew or believed the representation to be untrue; (4) the person to whom the representation was made had a right to rely on it and in fact did so; (5) the representation was made for the purpose of inducing the other party to act (or refrain from acting upon it); and (6) the representation made led to the injury of the person who relied on it.

*Zickur v. Irmiger* (1973), 15 Ill. App. 3d 805, 304 N.E.2d 635; *Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 213 N.E.2d 89.

The gist of plaintiff's theory is that defendant's letter to her attorney which indicated their investigation had failed to discover any possible third-party claims, was intended to prevent her from filing a timely third-party action. Assuming *arguendo* that this is true, the facts set forth in the complaint do not indicate that plaintiff relied on defendant's investigation. Rather, plaintiff's attorney, within the limitation period, filed suit and undertook procedures to ascertain whether a viable third-party action existed. A party is not justified in relying on representations made when he had ample opportunity to ascertain the truth of the representations before he acts. *Schmidt v. Landfield* (1960), 20 Ill. 2d 89, 169 N.E.2d 229.

■█■ Further, it is settled Illinois law that when it appears that a person charging misrepresentation has actually investigated and received information from his own sources rebutting the alleged misrepresentation, he is not in a position to claim he was deceived. (*Hayes v. Disque* (1948), 401 Ill. 479, 82 N.E.2d 350; *Peterson Industries, Inc. v. Lake View Trust & Savings Bank* (7th Cir. 1978), 584 F.2d 166.) The record in this case clearly establishes that plaintiff, through exercise of discovery procedures, had ample opportunity to ascertain the identity of any component parts manufacturers. When afforded the opportunity of knowing the truth or falsity of the alleged representation, a party is chargeable with that knowledge. If the party does not avail himself of the means of knowledge open to him, he cannot be heard to say he was deceived by misrepresentation. (*Schmidt v. Landfield* (1960), 20 Ill. 2d 89, 169 N.E.2d 229.) We necessarily must find that plaintiff's count IV of her second amended complaint fails to state a valid cause of action for fraud.

Accordingly, for the reasons set forth, we conclude the trial court properly dismissed the plaintiff's second amended complaint. The judgment order of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI and ROMITI, JJ., concur.